ORIGINAL

FILED

2013 AUG 15 A 11: 53

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
3  Post Montgomery Center
   One Montgomery Street, Suite 1800
4  San Francisco, CA 94104
   Telephone: 415/288-4545
5  415/288-4534 (fax)
   shawnw@rgrdlaw.com
6       – and –
   SAMUEL H. RUDMAN
7  MARY K. BLASY (211262)
   58 South Service Road, Suite 200
8  Melville, NY 11747
   Telephone: 631/367-7100
9  631/367-1173 (fax)
   srudman@rgrdlaw.com
10 mblasy@rgrdlaw.com

11 Attorneys for Plaintiffs

12 [Additional counsel appear on signature page.]

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15
   HUA-CHEN JENNY LIN and JONATHAN          ) No. 13            3791
16 W. DIAMOND, Individually and on Behalf of )
   All Others Similarly Situated,            ) CLASS ACTION
17                                           )
                          Plaintiffs,        ) COMPLAINT FOR VIOLATIONS OF THE
18                                           ) FEDERAL SECURITIES LAWS
                                             )
19           vs.                             )
                                             )
20 ECOTALITY, INC., H. RAVI BRAR and         )
   SUSIE HERRMANN,                           )
21                                           )
                          Defendants.        )
22                                           ) DEMAND FOR JURY TRIAL

23

24

25

26

27

28

SC

1   Plaintiffs Hua-Chen Jenny Lin and Jonathan W. Diamond ("Plaintiffs"), individually and on
2   behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs'
3   complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs
4   and Plaintiffs' own acts, and upon information and belief as to all other matters based on the
5   investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a
6   review of Securities and Exchange Commission ("SEC") filings by ECOtality, Inc. ("ECOtality" or
7   the "Company"), as well as conference call transcripts and media and analyst reports about the
8   Company. Plaintiffs believe that substantial evidentiary support will exist for the allegations set
9   forth herein after a reasonable opportunity for discovery.

10   ## NATURE OF THE ACTION

11   1.   This is a securities class action on behalf of all purchasers of the common stock of
12   ECOtality between April 16, 2013 and August 9, 2013, inclusive (the "Class Period"). Plaintiffs
13   seek to pursue remedies against ECOtality and several of its most senior executives under §§10(b)
14   and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated
15
16   thereunder.

17   ## JURISDICTION AND VENUE

18   2.   Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein
19   arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This
20   Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and
21   §27 of the Exchange Act.

22   3.   Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C.
23   §1391(b) as the Company is headquartered in this District and the alleged misconduct was transacted
24   in and emanated from this District.
25

26   4.   In connection with the acts alleged in this Complaint, Defendants, directly or
27   indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to,
28   the mails, interstate telephone communications and the facilities of the national securities markets.

1

**PARTIES**

2   5.   Plaintiffs, Hua-Chen Jenny Lin and Jonathan W. Diamond, as set forth in the

3   accompanying Certifications, which are incorporated by reference herein, purchased the common

4   stock of ECOtality during the Class Period and have been damaged thereby.

5   6.   Defendant ECOtality is an electric transportation and storage technologies company

6

7   that sells electric vehicle supply equipment ("EVSE") through its customer-facing brand of smart

8   electric vehicle chargers, Blink.  The Company's common stock is listed on the NASDAQ, an

9   efficient market, under the ticker symbol "ECTY" and, as of April 9, 2013, the Company had more

10   than 25.6 million shares of its common stock outstanding.

11   7.   Defendant H. Ravi Brar ("Brar") is, and was throughout the Class Period, ECOtality's

12   Chief Executive Officer ("CEO"), President and a director.  Defendant Brar joined the Company as

13
14   Chief Financial Officer ("CFO") in November 2010 and was named CEO, President and a director in

15   September 2012.

16   8.   Defendant Susie Herrmann ("Hermann") is, and was throughout the Class Period,

17   ECOtality's CFO.  Until September 2012, when she was named CFO, Defendant Herrmann served

18   as the Company's Vice President of Corporate Finance and has been with the Company since

19   February 2008.

20   9.   The defendants referenced above in ¶¶7-8 are referred to herein as the "Individual

21
22   Defendants."  ECOtality and the Individual Defendants are referred to herein, collectively, as

23   "Defendants."

24   **CLASS ACTION ALLEGATIONS**

25   10.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

26   Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the common stock of

27   ECOtality during the Class Period (the "Class").  Excluded from the Class are Defendants, the

28

officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

11. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ECOtality common stock and other publicly-traded securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds of thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ECOtality or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

12. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

13. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

14. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the Exchange Act was violated by Defendants as alleged herein;

(b) whether statements made by Defendants misrepresented material facts about the business, operations and management of ECOtality; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                         - 3 -

15. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

16. Defendant ECOtality, together with its subsidiaries, engages in designing, manufacturing, testing, and commercializing electric vehicle ("EV") charging and energy storage systems in the United States and internationally. ECOtality makes charging and power-storage systems for EVs under the Blink and Minit Charger brands. It also does testing for government agencies, auto makers and utilities.

17. The Company was formerly known as Alchemy Enterprises, Ltd. and changed its name to ECOtality, Inc. in November 2006. ECOtality was incorporated in 1999 and is headquartered in San Francisco, California.

18. ECOtality has three operating subsidiaries: ECOtality North America (formerly eTec), Innergy Power Corporation, Fuel Cell Store and ECOtality Australia Pty Ltd.[1]

19. Wholly-owned ECOtotality subsidiary ECOtality North America was awarded $99.9 million from the American Recovery and Reinvestment Act of 2009 by the United States Department of Energy ("DOE") for the EV Project. Officially launched in October 2009, the EV Project is an infrastructure study, the focus of which is to examine various situations involving EV drivers and charging infrastructure.

---

[1] Innergy Power Corporation designs and manufactures thin sealed lead batteries and high-quality flat-panel multicrystalline Photovoltaic solar modules. Innergy is also developing EV battery technology and designing/building battery packs in SLA, NiMH and Li chemistries. Fuel Cell Store is a provider of information, educational products, and services related to the fuel cell industry.

20.     ECOtality has also announced a series of partnerships with several retail hosts who would install Blink chargers, several of which were partnered as part of the EV Project. Partners include: Idaho National Laboratory, Oak Ridge National Laboratory, IKEA USA, Fred Meyer, Arco/BP, Macy's, Cracker Barrel, San Diego Gas & Electric, and more.  In 2011, ECOtality announced that it would partner with ABB, who invested $10 million into the Company to develop EV initiatives in North America.

**DEFENDANTS' FALSE AND MISLEADING
CLASS PERIOD STATEMENTS**

21.     The Class Period starts on April 16, 2013. On the evening of April 15, 2013, after the close of trading, ECOtality issued a press release announcing its financial results for its fourth quarter and fiscal year ended December 31, 2012. In addition to stating the Company had achieved a net loss of $2.3 million in the fourth quarter of 2012, down from a loss of 6.7 million in the fourth quarter of 2012, on revenues of $13.6 million in the fourth quarter of 2012, a 60% increase in revenues over the fourth quarter of 2011, and an annual loss of $9.6 million for fiscal 2012, down from its loss of $22.5 million in fiscal 2011, on fiscal year 2012 revenues of a "record $54.7 million" in fiscal 2012, increased 93% over the $28.4 million achieved in fiscal 2011, the press release quoted Defendant Brar stating, in pertinent part, as follows:

> Our strong financial performance for the year *reflects the health of the company and our continued execution upon our business model*. We have established three complementary lines of business – Blink®, Minit-Charger and eTec Labs – that provide us with *a stable, diversified and expanding revenue base*. 2012 was marked by substantial growth as we more than doubled the size of the Blink network, *validated our business model* with the introduction of access fees, and *successfully executed upon the objectives of the EV Project*. We ended the year with more than 10,000 Blink charging stations and 55 DC fast chargers installed making ECOtality the nation's largest DC charging network.

> *       *       *

> ECOtality has established a dominant market position in the EV industry and is *continuing to expand its footprint* with the company's strategic national accounts that host its Blink chargers. Additionally, the recent formation of Collaboratev, LLC, a partnership with ChargePoint, is a milestone for the industry and parallels the growth of the banking industry by allowing customers to access all charging networks with one access card and one bill. Blink's robust market presence,

1  combined with the increasing market penetration of plug-in electric vehicles, *well positions the company for continued growth*.

2

3  *This January, we unveiled the Minit-Charger 12, a product that targets the sweet spot of the market and serves as the foundation of our next generation of industrial fast charge solutions. The company has a renewed focus on our Minit-Charger*

4  *business and is committed to substantially expanding its market presence in the industrial sector to capitalize on increasing electrification trends*.

5

6  Looking ahead, we will continue to build upon our three core lines of business, Blink, Minit-Charger and eTec Labs with an emphasis on expanding our Blink Network across the country and launching our next generation of charging products.

7  With our interoperability partnership, strong product lines and extensive consulting activities, ECOtality is focused on expanding our position as the leader in electric

8  transportation technologies and solutions.[2]

9  22.    During the conference call held with investors later on the evening of April 15, 2013,

10  ECOtality made more positive comments about the strength of its business and product offerings,

11  including stating that "[o]verall, [ECOtality's] fourth quarter and annual results were largely driven

12  by *the continued successful rollout of the nationwide Blink network* and [its[ *ability to successfully*

13

14  *execute upon the deliverables of the EV Project*," and emphasizing the following fiscal 2013

15  outlook:

16  Moving forward in 2013, we'll continue to build upon our multiple lines of business as we launch our Blink Network in new markets and are *ramping up our sales*

17  *organization for life beyond the EV Project*. With our interoperability JV and our strategies for *building out and monetizing this growing industry*, we believe

18  ECOtality remains at the forefront of the evolving EVSE market. With our footprint of over 10,000 installed chargers, our loyal and growing membership base and the

19  strength of the Blink network and brand, *we are well-positioned to continue to grow in 2013*.

20  23.    Also on April 15, 2013, ECOtality filed its annual financial report for its fiscal year

21  ended December 31, 2012 on Form 10-K with the SEC. The Form 10-K stated, in pertinent part,

22

23  that: (i) the Company was "currently building the largest EV smart charging network in the U.S.";

24  (ii) that the Company had "been successful in [its] bids for public and private funding to support and

25  manage EV charging infrastructure research and deployment programs, including a $100.2 million

26  cost-share grant ("DOE Contract") from the [DOE], to lead, support and manage the largest

27

---

28  [2]    All emphasis in bold and italics is added, unless otherwise noted.

deployment of EVs and charging infrastructure in U.S. history"; (iii) that as "the project manager for The EV Project, [ECOtality was then] uniquely positioned to capture significant share of the domestic market for EV charging solutions"; and that (iv) "[t]hrough the EV Project and [the Company's] commercial sales channels, . . . the Blink Network [would] be the largest EV smart charging infrastructure network in the world and a well-recognized and trusted brand within the U.S. and international EV industry." The Form 10-K was signed and certified as to veracity under §§302 and 906 of the Sarbanes Oxley Act of 2002 by the Individual Defendants.

24. On this news, the Company's stock price spiked when trading resumed on April 16, 2013, closing up more than approximately 40% on extremely high trading volume of more than 2.69 million shares trading, or more than eight times the average daily volume over the preceding ten trading days.

25. Indeed, by April 30, 2013, the Company would file a Current Report on Form 8-K advising that despite having been previously advised by the staff of the NASDAQ that its common stock had failed to maintain a minimum bid price of $1.00 as required by the Listing Rules of The NASDAQ Stock Market, *and had thus been subject to a delisting proceeding*, following the Company's April 15, 2013 press release and Defendants' positive comments at the earnings conference and in the Form 10-K, "the Staff ha[d] determined that for the last 10 consecutive business days, from April 16, 2013 to April 29, 2013, the closing bid price of the Company's common stock ha[d] been at $1.00 per share or greater. Accordingly, the Company ha[d] regained compliance with Listing Rule 5550(a)(2)[,]" and the common stock of ECOtality was no longer subject to delisting.

26. On May 3, 2013, ECOtality filed a Current Report on Form 8-K with the SEC advising that it had scheduled its 2013 Annual Meeting of Shareholders to be held on August 22, 2013.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                              - 7 -

27.     On May 15, 2013, after the close of trading, ECOtality issued a press release announcing its financial results for its first quarter of 2013, ended March 31, 2013. In addition to stating the Company had achieved a net loss of just $0.6 million in the first quarter of 2013 on another quarter of "record" revenues of $15.9 million in the first quarter of 2013, a 16% increase in revenues over the first quarter of 2012, the press release quoted Defendant Brar stating, in pertinent part, as follows:

> Our first quarter results reflect continued installations of our *prevalent and growing Blink® network. We are on track to complete the commitments under the EV Project by the end of this year*, and have now focused our attention on our next stage of growth. Our Blink, Minit-Charger and eTec Labs businesses each provide *substantial opportunities supported by positive trends* in the commercial, residential and industrial EV markets. Our goal is to promote the use of clean energy technology to best serve our customers while simultaneously *cultivating shareholder value as we continue our transition and further build our business*.

>                         *       *       *

> *We are making progress in shifting our business from one primarily dependent on the EV Project to a company with a diversified product and services offering serving consumers, industrial and government clients*. We believe that *each of our three complementary product and service offerings present compelling growth opportunities* and we have set aggressive internal sales targets. Our efforts to expand our national account program *have been encouraging*, as the recent agreements with Kroger and Texas Instruments demonstrate our early traction and the viability of our charging stations and network. We are actively working to expand our Blink network across the country through our indirect sales channels and dealer network. In addition, *the Minit-Charger 12 is our first step to rejuvenate our presence in the industrial sector, and we are preparing to begin installations in the third quarter*.

28.     During the conference call held with investors later on the evening of May 15, 2013, ECOtality made more positive comments about the strength of its business and product offerings, including emphasizing that "[t]he EV Project has provided us with *a solid foundation to build upon*" "[a]nd we expect the steps we have implemented in Q1 to *leverage and expand our network and put us in a position to benefit from future growth in usage and subscription fees that will provide us with a recurring and predictable revenue streams*," and emphasizing the following fiscal 2013 outlook:

> It's important to note that the majority of our sales and revenue recognition from new sales outside of The EV Project *will be largely weighted towards the second half of*

*the year*. Based on the market trends and EVs, as well as our planned network expansion, *we also expect to see a continued uptick in usage trends*.

We expect to complete the installations of our level 2 residential and public charging systems under The EV Project this summer. And we expect to complete DC Fast Charger installations by Q3. After that happens, the majority of our revenues will then be generated by new hardware sales, usage fees, the latter of which is a new revenue stream for us, as well as annual licensing and maintenance fees. In addition, we continue to conduct further testing on advertising *and expect that it will represent an additional revenue stream in the future*.

We currently have over 12,000 Blink chargers installed all across the United States *and are continuing to gain traction in our major markets. . . .*

                    *       *       *

Looking beyond Blink, let's spend a moment talking about our other product and service offerings, which have become an increasing focus for us. We see opportunity for substantial growth in the industrial fast-charging market and in the launch of our Minit-Charger 12 represents our new focus in this market. *We are on track to begin deliveries in the third quarter to satisfy our healthy pipeline of interest in this product. . . .*

                    *       *       *

As you can see, *we're making progress on shifting our business to one with a significant concentration of revenue in one project to a well-diversified business*. We believe that each of our 3 complementary product and service offerings represent a *growth opportunity, a significant growth opportunity*. We have set aggressive internal sales targets and we intend to meet them. Our goal is to promote the use of clean, efficient, cost-effective transportation technology to best serve our customers *while simultaneously cultivating shareholder value as we continue to build our business.*

29.     On May 15, 2013, ECOtality also filed its quarterly financial report for its first quarter of 2013, ended March 31, 2013, on Form 10-Q with the SEC. The Form 10-Q stated, in pertinent part, that "ECOtality offer[ed] electric vehicle charging stations under the Blink brand and provide[d] *a turnkey network operating system for EV drivers, commercial businesses and utilities*" and that the "Minit-Charger manufacture[d] and distribute[d] fast-charging systems for material handling and airport ground support vehicles." The Form 10-Q was signed and certified as to veracity under §§302 and 906 of the Sarbanes Oxley Act of 2002 by the Individual Defendants.

30.     On May 24, 2013, ECOtality filed a Current Report on Form 8-K with the SEC disclosing that "[i]n March 2013, the Company issued 85,000 unregistered shares of common stock

1  under the Ecotality, Inc. 2007 Equity Incentive Plan to a third-party service provider in reliance on

2  the exemption for private offerings under Section 4(2) of the Securities Act of 1933, as amended."

3        31.    On June 13, 2013, ECOtality filed a Current Report on Form 8-K with the SEC

4  advising that on June 12, 2013 it had sold 5,123,423 shares of the Company's common stock in an

5  unregistered stock offering at a purchase price per share of $1.60, for an aggregate purchase price of

6  

7  $8,197,477. The Form 8-K also advised that the securities were sold subject to a registration rights

8  agreement pursuant to which the Company was required to register the shares for resale. ECOtality

9  advised on June 19, 2013 that the $8.2 million private placement had been completed, that the funds

10  would "be used for general corporate and working capital purposes," and that ECOtality was **then**

11  **"making good progress to advance [its] Blink Network and monetize [its] EV solutions**," adding

12  that "[t]his capital raise help[ed] the Company] **continue [its] operational momentum as [it]**

13  

14  **execute[d] on [its] strategic initiatives to expand [its] diversified business lines and continue to**

15  **build its] business**."

16        32.    Pursuant to a registration statement filed on Form S-3 on July 1, 2013 and declared

17  effective by the SEC on July 9, 2013, the 5+ million shares of ECOtality stock sold in the private

18  placement in June 2013 were registered for resale to the investing public at market prices and sales

19  of those shares commenced pursuant to a false and misleading prospectus filed with the SEC on July

20  

21  10, 2013.

22        33.    On August 6, 2013, ECOtality announced that its 2013 Annual Meeting of

23  Stockholders, originally scheduled to be held on August 22, 2013, had been postponed to October

24  29, 2013. Defendants also advised that contrary to the May 3, 2013 Form 8-K, the annual financial

25  data required to be disclosed prior to the 2013 Annual Meeting of Stockholders would not be made

26  available until September 2013.

27  

28

1    34.    The true facts, which were known by Defendants, but concealed from the investing

2  public during the Class Period, were as follows:

3         (a)    Due to design and manufacturing defects, some of ECOtality's charging

4  systems had been causing overheating and even melting of connector plugs when charging vehicles,

5  causing discord with customers and potentially requiring that the Company replace all connector

6  plugs on approximately 12,000 stations;

7

8         (b)    Despite efforts undertaken to transition the Company's business model from

9  subsidizing installations of EVSEs under the EV Project to regular commercial sales and

10  installations, ECOtality was not achieving enough commercial EVEC sales and installations to

11  sustain operations in the second half of 2013;

12         (c)    Due to "unacceptable performance shortfalls during prototype verification

13  testing," ECOtality was not on track to meet the scheduled release of a new Minit Charger product

14  for industrial customers in the second half of 2013;

15

16         (d)    Due to would-be potential investors' unwillingness to provide additional

17  needed financing, ECOtality was unable to obtain the requisite financing to meet its short-term and

18  long-term capital needs;

19

20         (e)    Because ECOtality was unable to secure the financing requisite to meet its

21  short-term and long-term capital needs, the Company would be unable to meet its obligations to the

22  DOE's EV Project and the DOE would suspend all payments to the Company; and

23         (f)    Due to non-compliance with the nation's labor laws, the Company was liable

24  to the U.S. Department of Labor ("DOL") for $855,000 for the payment of back wages and damages.

25    35.    On August 12, 2013, before the opening of trading, ECOtality announced that the

26  Company had hired a "restructuring" adviser to evaluate options including new financing, a possible

27  sale of the Company or bankruptcy filing. The Company's Current Report filed with the SEC on

28

1 Form 8-K that day emphasized, in pertinent part, that a bankruptcy filing could be made "in the very

2 near future" following, among other things, disappointing sales and suspension of payments from the

3 federal government.

4
36. ECOtality also disclosed that day that some of its charging systems had been causing

5
6 overheating and even melting of connector plugs when charging vehicles. As a result, ECOtality

7 stated that some manufacturers had told the Company they were threatening to advise customers to

8 avoid ECOtality's systems if the Company did not replace all connector plugs on about 12,000

9 stations.

10
37. The Company also disclosed that day that it was not on track to meet the scheduled

11
12 release deadline of a new Minit Charger product for industrial customers in the second half of 2013,

13 citing "unacceptable performance" during testing, and that it had not been able to line up sufficient

14 financing to meet its ongoing capital needs. As a result, the Company had been forced to advise the

15 DOE during the first week of August 2013 that it might not be able to meet its obligations to the

16 DOE's EV Project and the DOE had responded by notifying ECOtality that it would suspend

17 payments, ordering the Company not to incur any new costs on the project and instructing the

18 Company to provide notices to its vendors and subcontractors of the suspension.

19
38. Finally, the Company also disclosed that because it had violated provisions of the Fair

20
21 Labor Standards Act and the Davis-Bacon Act, ECOtality would be forced to pay $855,000 to the

22 DOL in fines and penalties to cover back wages and damages.

23
39. On this news, the price of ECOtality common stock, which had traded as high as

24 $2.40 per share in intraday trading during the Class Period, plummeted *more than 87%* from that

25 level to close at $0.30 per share when trading resumed on August 12, 2013, *erasing more than $53*

26 *million in market capitalization*.

27

28

40.     The market for ECOtality common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, ECOtality common stock traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired ECOtality common stock relying upon the integrity of the market price of ECOtality common stock and market information relating to ECOtality, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ECOtality common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about ECOtality's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of ECOtality and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing ECOtality common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the

price of ECOtality common stock was removed and the price of ECOtality common stock declined dramatically, causing losses to Plaintiffs and the other members of the Class.

### ADDITIONAL SCIENTER ALLEGATIONS

43.     As alleged herein, ECOtality and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding ECOtality, their control over, and/or receipt and/or modification of ECOtality's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning ECOtality, participated in the fraudulent scheme alleged herein.

### NO SAFE HARBOR

44.     ECOtality's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. §78u-5(b)(2)(A).

45.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of ECOtality who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or

1  relating to any plan, projection or statement of future economic performance, as they were not stated

2  to be such assumptions underlying or relating to any projection or statement of future economic

3  performance when made, nor were any of the projections or forecasts made by Defendants expressly

4  related to or stated to be dependent on those historic or present tense statements when made.

5
6  **APPLICATION OF PRESUMPTION OF RELIANCE:**<br>**FRAUD ON THE MARKET**

7      46.    Plaintiffs will rely upon the presumption of reliance established by the fraud on the

8  market doctrine in that, among other things:

9
10      (a)    Defendants made public misrepresentations or failed to disclose material facts

during the Class Period;
11

12      (b)    The omissions and misrepresentations were material;

13      (c)    The Company's securities traded in an efficient market;

14      (d)    The misrepresentations alleged would tend to induce a reasonable investor to

15  misjudge the value of the Company's securities; and

16      (e)    Plaintiffs and other members of the Class purchased ECOtality securities

17  between the time Defendants misrepresented or failed to disclose material facts and the time the true

18  facts were disclosed, without knowledge of the misrepresented or omitted facts.
19

20      47.    At all relevant times, the market for ECOtality securities was efficient for the

21  following reasons, among others:

22      (a)    As a regulated issuer, ECOtality filed periodic public reports with the SEC;

23  and

24      (b)    ECOtality regularly communicated with public investors via established

25  market communication mechanisms, including through regular disseminations of press releases on

26  the major news wire services and through other wide-ranging public disclosures, such as

27  communications with the financial press, securities analysts, and other similar reporting services.
28

1

**LOSS CAUSATION/ECONOMIC LOSS**

2      48.     During the Class Period, as detailed herein, Defendants made false and misleading

3   statements and engaged in a scheme to deceive the market and a course of conduct that artificially

4   inflated the price of ECOtality common stock and operated as a fraud or deceit on Class Period

5   purchasers of ECOtality common stock by misrepresenting the value of the Company's business and

6   prospects by overstating its earnings and concealing the significant defects in its internal controls.

7   As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price

8   of ECOtality common stock fell precipitously, as the prior artificial inflation came out of the price.

9   As a result of their purchases of ECOtality common stock during the Class Period, Plaintiffs and

10   other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

11

12                                  **COUNT I**

13              **For Violations of §10(b) of the Exchange Act and Rule 10b-5**
14              **Against Defendant ECOtality and the Individual Defendants**

15      49.     Plaintiffs incorporate ¶¶1-48 by reference.

16      50.     During the Class Period, Defendants ECOtality and the Individual Defendants

17   disseminated or approved the false statements specified above, which they knew or deliberately

18   disregarded were misleading in that they contained misrepresentations and failed to disclose material

19   facts necessary in order to make the statements made, in light of the circumstances under which they

20   were made, not misleading.

21      51.     Defendants ECOtality and the Individual Defendants violated §10(b) of the Exchange

22   Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made

23   untrue statements of material facts or omitted to state material facts necessary in order to make the

24   statements made, in light of the circumstances under which they were made, not misleading; or

25   (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon

26

27

28

1  Plaintiffs and others similarly situated in connection with their purchases of ECOtality securities

2  during the Class Period.

3    52.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of

4  the market, they paid artificially inflated prices for ECOtality securities. Plaintiffs and the Class

5

6  would not have purchased ECOtality securities at the prices they paid, or at all, if they had been

7  aware that the market prices had been artificially and falsely inflated by Defendants' misleading

8  statements.

9                              **COUNT II**

10          **For Violations of §20(a) of the Exchange Act**
11   **Against Defendant ECOtality and the Individual Defendants**

12    53.    Plaintiffs incorporate ¶¶1-52 by reference.

13    54.    The Individual Defendants acted as controlling persons of ECOtality within the

14  meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, and their

15  ownership of ECOtality securities, the Individual Defendants had the power and authority to cause

16  ECOtality to engage in the wrongful conduct complained of herein. ECOtality controlled the

17  Individual Defendants and all of the Company's employees. By reason of such conduct, Defendants

18

19  are liable pursuant to §20(a) of the Exchange Act.

20                           **PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

22    A.    Determining that this action is a proper class action, designating Plaintiffs as Lead

23  Plaintiffs and certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of

24  Civil Procedure and Plaintiffs' counsel as Lead Counsel;

25    B.    Awarding compensatory damages in favor of Plaintiffs and the other Class members

26  against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

27

28  wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: August 15, 2013

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS

_____
                SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  4104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ZELDES, HAEGGQUIST & ECK, LLP
AMBER L. ECK
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                - 18 -

1

2     HOLZER HOLZER & FISTEL LLC
      MICHAEL I. FISTEL, JR.
3     200 Ashford Center North, Suite 300
      Atlanta, GA 30338
4     Telephone: 770/392-0090
      770/392-0029 (fax)

5     Attorneys for Plaintiffs

6

7     C:\Users\DeborahD\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\BDBQP6PM\Cpt ECOtality.docx

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                    - 19 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

HUA-CHEN JENNY LIN ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired (Trade Date) | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 5/29/2013 | 5000 | 1.7 |
| 5/28/2013 | 5000 | 1.8 |
| 5/28/2013 | 5000 | 1.85 |
| 5/28/2013 | 5000 | 1.9 |
| 5/28/2013 | 5000 | 1.95 |
| 5/28/2013 | 5000 | 2 |
| 5/28/2013 | 5000 | 2.05 |
| 5/28/2013 | 5000 | 2.1 |
| 5/23/2013 | 1000 | 1.63 |
| 5/22/2013 | 1000 | 1.78 |
| 5/21/2013 | 1000 | 1.9 |
| 5/20/2013 | 1000 | 2 |

**Sales:**

| Date Sold (Trade Date) | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 6/10/2013 | 10000 | 1.92 |
| 5/28/2013 | 1000 | 2.2 |
| 5/24/2013 | 1000 | 1.98 |
| 5/23/2013 | 1000 | 1.82 |

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _14_ day of _August_, 2013.

_____
DR. HUA-CHEN JENNY LIN

- 2 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| ECTY | 7/29/2013 | 665 | 1.47 |
| | 7/29/2013 | 100 | 1.4699 |
| | 7/29/2013 | 100 | 1.4650 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| ECTY | 8/13/2013 | 865 | .2421 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _14th_ day of _August_, 2013 in _Wallingford_ , _PA_ .
　　　　　　　　　　　　　　　　　　　　　　　　City　　　　　　　　State

(Signature) X _____

(Print Name) _JONATHAN W. DIAMOND_

2