1  COOLEY LLP
   TOWER C. SNOW, JR. (58342)
2  (tsnow@cooley.com)
   101 California Street
3  San Francisco, CA  94111-5800
   Telephone:     (415) 693-2000
4  Facsimile:     (415) 693-2222

5  JOHN C. DWYER (136533)
   (dwyerjc@cooley.com)
6  JESSICA VALENZUELA SANTAMARIA (220934)
   (jsantamaria@cooley.com)
7  ADAM C. TRIGG (261498)
   (atrigg@cooley.com)
8  Five Palo Alto Square
   3000 El Camino Real
9  Palo Alto, CA  94306-2155
   Telephone:     (650) 843-5000
10 Facsimile:     (650) 849-7400

11 JOSEPH B. WOODRING (272940)
   (jwoodring@cooley.com)
12 1333 2nd Street, Suite 400
   Santa Monica, CA 90401
13 Telephone:     (310) 883-6400
   Facsimile:     (310) 849-6500

14

   Attorneys for Defendants
15 H. RAVI BRAR, SUSIE HERRMANN, ENRIQUE
   SANTACANA, KEVIN CAMERON, and ANDREW TANG

16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20

21                                    Case No.  3:13-CV-03791-SC
                                      (Consolidated with 3:13-cv-03840 and
22                                    3:13-cv-04569)

23
   In re ECOtality, Inc. Securities Litigation.    **CLASS ACTION**
24
                                      **REPLY IN SUPPORT OF MOTION
25                                    TO DISMISS CONSOLIDATED
                                      AMENDED COMPLAINT**
26
                                      Judge:    Hon. Samuel Conti
27                                    Date:     August 22, 2014
                                      Time:     10:00 a.m.
28                                    Ctrm:     1, 17th Floor

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC

# Table of Contents

**Page**

I.     INTRODUCTION ........................................................................................................... 1

II.    THE ALLEGED MISSTATEMENTS ARE NOT ACTIONABLE.................................... 2

    A.     The Complaint Challenges Predictions of Future Performance, Which Are Statutorily Protected by the PSLRA's Safe Harbor ................................ 2

    B.     Defendants' Statements of Opinion or Optimism Are Not Actionable ................ 5

III.   PLAINTIFFS FAIL TO PLEAD SCIENTER WITH PARTICULARITY ....................... 6

    A.     The CWs Do Not Have Personal Knowledge of Any Facts Giving Rise to a Strong Inference of Scienter.................................................................... 6

    B.     The Brar Declaration and OIG Reports Do Not Support a Strong Inference of Scienter ................................................................................................. 10

    C.     Plaintiffs' Complaint Does Not Support a "Core Operations" Inference ............. 12

    D.     Viewed Holistically, the Complaint Fails to Raise an Inference of Scienter........ 13

IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ................................................. 14

V.     CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. United States*,
    No. 08-cv-1362, 2010 U.S. Dist. LEXIS 36848 (C.D. Ill. Apr. 13, 2010) ............................... 6

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ......................................................................................... 5

*Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .......................................................................................... 7

*Casella v. Webb*,
    883 F.2d 805 (9th Cir.1989) .......................................................................................... 5

*Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*,
    No. 11-01016 SC, 2012 WL 685344 (N.D. Cal. Mar. 2, 2012) (Conti, J.) .............................. 4

*City of Livonia Employees' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ................................................................. 6, 10, 11, 12

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................... 8, 9

*In re Convergent Tech. Sec. Litig.*,
    948 F.2d 507 (9th Cir. 1991) ....................................................................................... 4, 5

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) .............................................................................. 2, 4, 5

*In re Downey Sec. Litig.*,
    No. CV 08-3261-JFW, 2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ................................... 14

*In re Downey Secs. Litig.*,
    No. CV 08-3261-JFW, 2009 U.S. Dist. LEXIS 83443 (C.D. Cal. Aug. 21, 2009) ................. 9

*In re Duane Reade Inc. Sec. Litig.*,
    No. 02 Civ. 6478(NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) .............................. 3

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................................... 15

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) .................................................................................................... 2

Cooley LLP
Attorneys At Law
San Francisco

ii.

**REPLY ISO MOTION TO DISMISS**
**CONSOLIDATED AMENDED COMPLAINT**
**3:13-CV003791-SC**

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002).........................................................................13, 14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)...............................................................................15

*In re Parametric Tech. Corp.*,
  300 F. Supp. 2d 206 (D. Mass. 2001) ....................................................................13

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
  No. 12-16430, 2014 U.S. App. LEXIS 13530 (9th Cir. Jul. 16, 2014)..........................*passim*

*Pound v. Stereotaxis, Inc.*,
  No. 4:11CV1752 HEA, 2014 WL 1048590 (E.D. Mo. Mar. 18, 2014) ................................3

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  930 F. Supp. 68 (S.D.N.Y. 1996)..............................................................................5

*In re Rackable Sys., Inc. Sec. Litig.*,
  C 09-0222 CW, 2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) ...........................................14

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014).................................................................................13

*Rosenbaum Capital, LLC v. McNulty*,
  549 F. Supp. 2d 1185 (N.D. Cal. 2008) .....................................................................4

*South Ferry LP, #2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008)............................................................................12, 13

*In re Splash Tech. Holdings Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) .....................................................................5

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  No. C 99-00109 ....................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................................5, 6, 8, 14

*In re Tut Sys., Inc. Sec. Lit.*,
  No. C 01-02659 CW, 2002 U.S. Dist. LEXIS 27092 (N.D. Cal. Aug. 15, 2002) ...................5

*United States v. Nobles*,
  422 U.S. 225 (1975)................................................................................................6

*In re Vantive Corp. Sec. Litig.*,
  110 F. Supp. 2d 1209 (N.D. Cal. 2000), *aff'd*, 283 F.3d 1079 (9th Cir. 2002)....................10

*Warshaw v. Xoma Corp.*,
  74 F.3d 955 (9th Cir. 1996).....................................................................................5

Cooley LLP
Attorneys At Law
San Francisco

iii.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

*Zack v. Allied Waste Indus.*,
No. Civ-04-1640-MHM, 2005 U.S. Dist. LEXIS 35323 (D. Ariz. Dec. 15, 2005)..................7

*Zucco Partners, LLC v. Digimac Corp.*,
552 F.3d 981 (9th Cir. 2009)...........................................................................................*passim*

**Statutes**

15 U.S.C. § 78u-5(c) ................................................................................................................ 2

15 U.S.C. § 78u–5(c)(1)(A)(i) ................................................................................................. 4

PSLRA ...........................................................................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

## I.     INTRODUCTION

Plaintiffs' Complaint falls well short of pleading falsity, scienter or loss causation as required by the PSLRA.  Plaintiffs' opposition brief ("Opposition" or "Opp.") highlights rather than rehabilitates the Complaint's fatal deficiencies.  Indeed, the Ninth Circuit's decision in *Police Ret. Sys. v. Intuitive Surgical, Inc.*, No. 12-16430, 2014 U.S. App. LEXIS 13530 (9th Cir. Jul. 16, 2014), issued just days ago, rejects the very same arguments made by Plaintiffs here and confirms that allegations like those in the Complaint are insufficient, striking a fatal blow to Plaintiffs' claims.

*Falsity*.  Plaintiffs' allegations, at their core, attack nothing but quintessential forward-looking statements regarding Defendants' predictions about the Minit-Charger 12, prospects for post-EV Project sales, and expectations for completion of the EV Project.  Because the Company warned of the very difficulties that came to pass, these statements are insulated by the PSLRA's safe harbor.  Plaintiffs' only response is to ignore controlling Ninth Circuit precedent and claim that the forward-looking statements are actionable.  Even if the challenged statements were not forward-looking (and they are), they are inactionable statements of corporate optimism—or simply not alleged to be false with the requisite particularity.

*Scienter*.  Plaintiffs are unable to identify a *single* particularized fact in the Complaint supporting that any Defendant *knew* his or her statements were false or misleading *when made*.  Instead, Plaintiffs rely on unreliable confidential witnesses ("CWs"), Office of Inspector General ("OIG") reports that are silent as to the Defendants' state of mind, and mischaracterizations of one sentence in the Declaration of Ravi Brar ("Brar Declaration")[1] that was drafted well after the Class Period and only underscores Plaintiffs' improper theory of fraud-by-hindsight.

*Loss Causation*.   Neither the Complaint nor the Opposition identifies a "corrective disclosure" that revealed any alleged fraud.  In particular, the Company's August 12 announcement says *nothing* to indicate that the Company's progress on the EV Project had anything to do with its precarious financial condition.

---

[1] So the Court can review the entire Brar Declaration, Defendants submit it as Exhibit 21 to the Supplemental Declaration of Joseph B. Woodring, hereinafter referred to as "Ex. 21."

Cooley LLP
Attorneys At Law
San Francisco

1.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

***Securities Act Claims***.  Plaintiffs admit they lack standing under the Securities Act and abandon their Section 11 and 15 claims (Opp. at 30 n.6), which should be dismissed with prejudice.

Plaintiffs' suggestion that Defendants lied to investors in Q2 2013 *only to reveal the alleged fraud the following quarter*, selling not a single share of their stock holdings, is completely irrational, defies common sense, and lacks any of the particularized facts required under the PSLRA.

## II.      THE ALLEGED MISSTATEMENTS ARE NOT ACTIONABLE

Plaintiffs' Section 10(b) claim fails because the challenged statements are statutorily-immunized forward-looking statements that were accompanied by meaningful cautionary language. Most are also inactionable statements of corporate optimism.[2]

### A.      The Complaint Challenges Predictions of Future Performance, Which Are Statutorily Protected by the PSLRA's Safe Harbor.

Plaintiffs do little to contest that the challenged statements (which center on ECOtality's (i) *expectations* for completion of the EV Project, (ii) *potential future sales* of EV chargers after completion of the EV Project and (iii) *prospects* for the yet-to-be-launched-Minit-Charger 12) are, by definition, forward-looking.  Nor do Plaintiffs dispute any of Defendants' authority establishing that such statements are, indeed, immunized.  Instead, they:  (1) mischaracterize Defendants' statements as present tense rather than forward-looking and (2) rely on invalid case law to argue that Defendants' risk warnings were not meaningful.

**Defendants' statements were forward looking.[3]**  The PSLRA mandates dismissal of securities fraud claims based upon predictions of future events, regardless of what any defendant knew at the time.  15 U.S.C. § 78u-5(c); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). Plaintiffs' contention that Defendants' statements about the Company's **_future expectations_** are not forward-looking requires a tortured reading of the alleged misrepresentations.  For example, the

---

[2] Plaintiffs ignore U.S. Supreme Court precedent to argue that Ms. Herrmann is liable for statements made by Mr. Brar.  (Opp. at 20:10-22.)  *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301-03 (2011), foreclosed liability under the federal securities laws for statements made by others.  The old Circuit case law upon which Plaintiffs rely is no longer viable after *Janus*.

[3] Plaintiffs argue that Defendants do not contend that certain statements in the Complaint are forward-looking.  (Opp. at 18:16-17 (citing ¶¶ 69, 71, 114-116, 118, 124, 126, 128-130, 132).)  This contention is baseless.  (Mot. at 12 n.12.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
2.
**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

Opposition cites the following alleged April or May false statements:

- ECOtality was "well on [its] way to completing the EV project **by summer of 2013 and achieving its goal of over 13,000 chargers deployed by the middle of the year**" (Opp. at 7:17-19);

- ECOtality "**expect[ed] to complete** the installation of our Level 2 residential and public charging systems under the EV Project **this summer**" (*id*. at 7:23-24); and

- "[W]e are **preparing to begin** installations [of the Minit-Charger 12] **in the third quarter**." (*id*. at 10:17-18 (emphasis added).)

Plaintiffs' halfhearted attempt to label these statements as present tense defies reason. For example, Plaintiffs argue that Mr. Brar's proclamation "[w]e'll begin deliveries of the Minit-Charger 12 by Q3 of this year . . ." is not forward-looking because Mr. Brar did not say "we *expect* to begin deliveries." (Opp. at 18:20-23). The statement, however, unambiguously refers to the Company's plan for an unreleased product in future quarters. It is, therefore, inactionable. *See Intuitive Surgical*, 2014 U.S. App. LEXIS 13530 at *15-*16 (holding "statements related to future expectations and performance" are forward-looking); *Pound v. Stereotaxis, Inc.*, No. 4:11CV1752 HEA, 2014 WL 1048590, at *5 (E.D. Mo. Mar. 18, 2014) ("[A] statement about the state of a company whose truth or falsity is discernible only after it is made necessarily refers only to future performance.") (internal quotations and citation omitted); *In re Duane Reade Inc. Sec. Litig.*, No. 02 Civ. 6478(NRB), 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003) ("Investors know . . . that when a company's officer makes predictions . . . they are not issuing guarantees." (citation and internal quotation marks omitted)). These, and nearly all of the statements identified in the Opposition and challenged in Plaintiffs' Complaint, are forward-looking on their face. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727377, at *6 (N.D. Cal. Sept. 29, 2000) ("A present-tense statement can qualify as a forward-looking statement as long as the truth or falsity of the statement cannot be discerned until some point in time after the statement is made.").

**ECOtality gave meaningful risk warnings.** Plaintiffs argue that ECOtality's cautionary statements "were not meaningful because they did not disclose the [] problems that defendants knew" about the status of the EV Project and the development of the Minit-Charger 12.[4] (Opp. at 19:21-22;

---

[4] Plaintiffs appear to concede that ECOtality's risk factor disclosures about the Company's post-EV Project sales were sufficient as they are entirely silent on this issue in the Opposition. (*See* Opp. at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

1  *see generally id*. at 18:25-20:8.)  But Plaintiffs rely on *Rosenbaum Capital, LLC v. McNulty*, 549 F.

2  Supp. 2d 1185, 1190-91 (N.D. Cal. 2008), which is no longer good law following the Ninth Circuit's

3  opinion in *Cutera.  Cutera* could not be more clear:  "[I]f a forward-looking statement is identified as

4  such and accompanied by meaningful cautionary statements, then ***the state of mind of the individual***

5  ***making the statement is irrelevant***, and the statement is not actionable regardless of the plaintiff's

6  showing of scienter."  610 F.3d at 1112 (emphasis added).  *Intuitive Surgical* reaffirmed *Cutera's*

7  holding.  2014 U.S. App. LEXIS 13530 at *13-*14 (safe harbor applies if identified as forward-

8  looking and accompanied by warnings ***or*** even if not so identified, unless made with actual

9  knowledge of falsity) (citing *Cutera*).  Not surprisingly, Plaintiffs completely ignore *Cutera*.

10  Here, all of the challenged disclosures were identified as forward-looking and referred

11  investors to the extensive risk warnings included in ECOtality's SEC filings.  (Mot. at 14:22-24,

12  n.13.)  As such, the only question is whether those risk warnings were meaningful under the PSLRA,

13  which requires cautionary language to identify "***important factors*** that could cause actual results to

14  differ materially from those in the forward-looking statement."  15 U.S.C. § 78u–5(c)(1)(A)(i)

15  (emphasis added); *see Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*, No. 11-

16  01016 SC, 2012 WL 685344, at *5 (N.D. Cal. Mar. 2, 2012) (Conti, J.) (cautionary language is

17  adequate "when an investor has been warned of risks of a significance similar to that actually

18  realized") (citations and internal quotations omitted).  ECOtality's risk factors warned investors about

19  the risks to continued funding under the EV Project, the challenges associated with transitioning from

20  the EV Project, and potential issues accompanying development of the Minit-Charger 12.  (Mot. at

21  14:17-15:23; *see also* Dkt. No. 60-1 [Appendix of Risk Factor Disclosures].)  These are the *very same*

22  adverse events that Plaintiffs argue were concealed from them.  (¶ 160.)

23  Finally, Plaintiffs cite inapposite authority to argue that ECOtality's risk disclosures

24  themselves are actionable.  (Opp. at 20:1-8.)  Among other Ninth Circuit cases, *In re Convergent*

25  *Tech. Sec. Litig.*, 948 F.2d 507, 515 (9th Cir. 1991) completely undermines Plaintiffs' position.

26  There, the court held that risk disclosures were not actionable where they "virtually overflow[ed] with

27

28  18:25-20:8; *see also* Mot. at 15:9-16; Dkt. 60-1 [Appendix of Risk Factor Disclosures].)

Cooley LLP
Attorneys At Law
San Francisco

4.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

1   [] repeated emphasis of significant risk factors . . . ."  *Id.* at 515 (adequate risk factors noted, *inter alia*,

2   "[t]here can be no assurance that the Company will successfully complete the development of its new

3   products . . .").  As in *Convergent*, the Company's inactionable risk disclosures warned, among other

4   things, that "Product development and commercialization milestones may not be met."  (Ex. 3 at 11.)[5]

5   ## B.   Defendants' Statements of Opinion or Optimism Are Not Actionable.

6   Plaintiffs argue that statements of corporate optimism are actionable, but offer nothing more

7   than citations to inapposite authority.[6]  (Opp. at 17:26-28).  *Tellabs, Inc. v. Makor Issues & Rights,*

8   *Ltd.*, 551 U.S. 308, 322-23 (2007), contains no discussion of statements of optimism.  The other two

9   cases Plaintiffs cite were both decided *before the PSLRA went into effect*, were not subject to

10  heightened pleading standards, and contained other specific allegations that were sufficient at the time

11  to establish defendants' knowledge.  *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)

12  (concluding statement that "everything [was] going fine" was actionable under pre-PSLRA pleading

13  standard); *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir.1989) (seller allegedly told purchaser that

14  returning a profit was a "sure thing")).)

15  Plaintiffs do nothing to refute the plethora of authority cited in Defendants' opening brief that

16  establishes that the alleged misstatements are inactionable.  *Cutera*, 610 F.3d at 1111 (cited by Mot. at

17  16); *accord In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1072, 1077 (N.D. Cal.

18  2001) (holding vague assessments such as "healthy," "robust," "well positioned," "solid,"

---

19

20  [5] Plaintiffs' remaining authority is similarly unconvincing.  In *Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982, 985 & 987 (9th Cir. 2008) the risks that had "already [] come to fruition" were stop-
21  work orders that halted tens of millions of dollars of work and had the "very obvious effect of putting
    numerous employees out of work."  Plaintiffs have pled no equivalent facts here.  *In re Prudential*
22  *Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) is both procedurally inapt
    (analyzing whether "Plaintiffs' allegations and discovery data obtained to date have raised issues of
23  material fact") and substantively distinguishable (defendants provided only "[g]eneral risk disclosures
    in the face of specific known risks").  And the boilerplate warning "[m]anufacturing or design defects
24  in our products could harm our reputation and business" found actionable in *In re Tut Sys., Inc. Sec.*
    *Lit.*, No. C 01-02659 CW, 2002 U.S. Dist. LEXIS 27092, at *6-7 (N.D. Cal. Aug. 15, 2002) is a far
25  cry from the fulsome multi-page risk disclosures in ECOtality's SEC filings.

26  [6] Plaintiffs assert that Defendants only challenge six statements in the Complaint as inactionable
    corporate puffery.  (Opp. at 17:10-15.)  But Defendants noted that "[m]any of Plaintiffs' complained-
27  of statements" are inactionable corporate optimism, and did not purport to include an exhaustive list.
    (Mot. at 16:13-27.)
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

1  "improved," "better than expected," and "unfolding as planned," are not actionable).  Indeed, many of

2  the statements that Plaintiffs highlight in the Opposition are generalized statements of corporate

3  optimism.  (*See, e.g.*, Opp. at 12:9-10 (ECOtality is "**well positioned** to monetize" EV industry

4  growth); *id.* at 10:14-15 (Mini-Charger 12 is "**foundation of our next generation** of industrial fast

5  charge solutions").)  The Ninth Circuit held similar "feel good monikers" not actionable as they are

6  "the antithesis of facts."  *Intuitive Surgical*, 2014 U.S. App. LEXIS 13530 at *17-*18 (finding

7  inactionable statements such as "the opportunity … is still very, very large"; the company is "in a

8  pretty good position").  Because "professional investors, and most amateur investors as well, know

9  how to devalue the optimism of corporate executives," Plaintiffs' attack on Defendants' corporate

10  puffery fails.  *Id.* at *18 (quoting *Cutera*, 610 F.3d at 1111) (citation and internal quotations omitted).

11  **III.    PLAINTIFFS FAIL TO PLEAD SCIENTER WITH PARTICULARITY**

12      The Opposition does not rectify the Complaint's utter failure to demonstrate a "strong . . .

13  powerful or cogent" inference of scienter.  *Tellabs, Inc.*, 551 U.S. at 323.  To support scienter,

14  Plaintiffs rely on:  (A) the CW accounts, (B) the Brar Declaration and OIG reports, and (C) the "core

15  operations" inference.  However, Plaintiffs' scienter theories are neither well-pled nor outweigh the

16  more "plausible nonculpable explanations" for defendants' conduct.  *Tellabs*, 551 U.S. at 324.

17      **A.    The CWs Do Not Have Personal Knowledge of Any Facts Giving Rise to a
            Strong Inference of Scienter.**

18

19      **The CWs are not reliable:**  To plead a strong inference of scienter based on allegations of

20  confidential witnesses, the CWs "must be described with sufficient particularity to establish their

21  reliability and personal knowledge."  *Zucco Partners, LLC v. Digimac Corp.*, 552 F.3d 981, 995 (9th

22  Cir. 2009).  The Complaint fails to do so.  (Mot. at 21-22.)[7]

23  ────────────────────

[7] The Opposition concedes that **none** of Plaintiffs' lawyers have never spoken to the CWs.  (*See* Opp.
24  at 25:24-26:16.)  For this reason alone, the CW allegations are highly suspect and insufficient to raise
    a strong inference of scienter.  *See City of Livonia Employees' Ret. Sys. & Local 295/Local 851 v.*
25  *Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013).  Plaintiffs contend that courts approve the use of
    investigators, but they cite *no case endorsing the use of investigators in preparing pleadings, which*
26  *are subject to Rule 11*. *See United States v. Nobles*, 422 U.S. 225, 238 (1975) (analyzing whether
    materials compiled by investigators for trial is protected work product); *Bailey v. United States*, No.
27  08-cv-1362, 2010 U.S. Dist. LEXIS 36848 (C.D. Ill. Apr. 13, 2010) (criminal defense counsel relied
    on investigator for "case preparation").

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

Plaintiffs argue that the inherently unreliable CWs corroborate one another. This circular theory is nonsense. Unreliable statements are not made reliable by the sheer number of alleged CWs who make them. *See Zack v. Allied Waste Indus.*, No. Civ-04-1640-MHM, 2005 U.S. Dist. LEXIS 35323, *35-*42 (D. Ariz. Dec. 15, 2005) (holding CW statements inadequate to plead scienter even where "each witness corroborates each others statements"); *Zucco*, 552 F.3d at 999-1000 (complaint's "plethora of confidential witness statements fail to create a [sic] an inference of scienter"); *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004) ("The sheer volume of confidential sources cited cannot compensate for . . . inadequacies" in reliability.).

Second, Plaintiffs argue that each CW is reliable because his or her statements are corroborated by the Brar Declaration. But, as described below, Plaintiffs' reliance on the Brar Declaration is misplaced. At most, the Brar Declaration states generally that some of the problems that caused ECOtality's decline existed in Q1 and Q2 2013. But the declaration does not explain which problems existed, when they arose, who knew about them, the extent of the knowledge of the problem, or, most importantly, whether Mr. Brar or Ms. Herrmann was aware of them at the time.

Finally, the few arguments Plaintiffs make for each CW do not establish their reliability. Plaintiffs claim CW1 is reliable because he allegedly managed the sales systems, however, CW1 was an IT manager and there are no allegations that he was responsible for analyzing sales figures. (*See* ¶¶ 40-41.) Plaintiffs do not even attempt to argue that CW5's statements are reliable, nor can they since CW5 was a *regional* account manager responsible for *direct* sales (¶ 47), but made statements regarding *indirect* sales *company-wide* (*id.*; *see also* ¶ 105). Plaintiffs claim CW6's alleged statements should be accepted because in *some* circumstances hearsay may be reliable. (Opp. at 24:21-25:3.) While this may be true, CW6's statements about the Minit-Charger 12 rely entirely on hearsay from "Victor," and the Complaint says nothing about why "Victor's" statements about the Minit-Charger 12 are reliable. Moreover, Plaintiffs do not seriously challenge that CW4 – who left ECOtality just one month into the Class Period – is unreliable, and instead reference statements by other (unreliable) CWs and the Brar Declaration. (Opp. at 24:12-19.) Without sufficient facts to support their reliability, Plaintiffs' CW allegations do not support an inference of scienter.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC

**The CWs do not allege any fact bearing on defendants' state of mind:**  Even if the CW allegations were reliable (and they are not), they are not "indicative of scienter." *Zucco*, 552 F.3d at 995.  Plaintiffs rely on CWs to argue that Mr. Brar and Ms. Herrmann "knew" they were making false statements about the status of the EV Project, the Minit-Charger 12, and post-EV Project sales.  However, the CWs say *nothing* about Mr. Brar's and Ms. Herrmann's knowledge, much less support a "strong . . . powerful or cogent" inference of scienter.  *Tellabs*, 551 at 323.

**EV Project**:  Plaintiffs cite alleged statements by four CWs to argue that there were "problems" with the EV Project, including (i) a backlog of charger orders, (ii) "issues" obtaining materials to build certain chargers, (iii) reports of overheating charger plugs, and (iv) problems with charger software.  (Opp. at 9:18-10:9.)  That the Company may have encountered operational issues while performing a $100 million government contract spanning several years is not only not surprising but would be expected.  It certainly does not mean that Mr. Brar or Ms. Herrmann committed securities fraud.  Importantly, Plaintiffs do not identify how, or *if*, these alleged problems impacted installation rates under the EV Project, much less when these problems allegedly occurred.  Nor do Plaintiffs identify when, or *if*, Mr. Brar and Ms. Herrmann learned about these problems.  Absent such specifics, Plaintiffs' allegations fall far short of the PSLRA.  *Zucco*, 552 F.3d at 996.

**Minit-Charger 12**:  Plaintiffs argue that statements by CW2, CW4, and CW6 establish that Defendants knew their statements about a Q3 2013 release date for the Minit-Charger 12 were false and misleading.  Notwithstanding the reliability issues addressed above, none of these CWs allege that Defendants believed the CWs' assessment that the Minit-Charger 12 would "likely" be delayed.  Without allegations that the Defendants understood and agreed with the impact of this information, Plaintiffs cannot establish scienter.  This case is on all fours with *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal. 2012).  There, plaintiffs alleged that defendants "had intimate knowledge about all aspects of Juniper's business operations; received daily reports; had ready access to Juniper's computerized systems containing up-to-date information regarding Juniper's sales, product demand, expenses, and inventory . . . ."  *Id.* at *1056.  Plaintiffs relied on five CWs, one of whom "reported that she created executive reports that provided an overview of Juniper's performance and outlook that were reviewed and discussed at weekly meetings

Cooley LLP
Attorneys At Law
San Francisco

8.

REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC

1   attended by senior management," and that "attendees at her executive meetings regularly expressed

2   concern about sales performance and pricing pressure." *Id.* at 1064-1065.  The court dismissed the

3   complaint, finding the CW allegations insufficient to establish scienter because, among other things,

4   they "*never allege[d] that anyone at any of her weekly meetings ever believed any of the problems*

5   *alleged by Plaintiff to be so severe that it would prevent [defendant] from meeting its long term*

6   *goals*." *Id.* at 1065 (emphasis added).  The same result is compelled here.

7        ***Post-EV Project Sales***:  Plaintiffs cite statements by five CWs to argue the Defendants lied

8   about ECOtality's transition from the EV Project.  (Opp. at 12:25-13:23.)  Plaintiffs *do not* contend

9   that any of the CWs communicated about the purported sales shortfalls directly to the Defendants.

10  (*See* Opp. at 12:25-13:23.)[8]  In addition, ***none*** of these CWs provide any information from which the

11  Court can infer that the Defendants understood that the sales results would impact the Company's

12  financial position.  *See City of Royal Oak*, 880 F. Supp. 2d at 1064-65.  These omissions are

13  especially glaring considering the CWs' contradictory allegations.  For example, CW1 claims that

14  sales were "extremely short of internal [] forecasts" (Opp. at 12:27-28), while CW2 alleges that "there

15  was no forecast for such sales" (*id.* at 13:15).  *See Zucco*, 552 F.3d at 999 (dismissing CW allegation

16  as "too contradictory to be compelling"); *In re Downey Secs. Litig.*, No. CV 08-3261-JFW (RZx),

17  2009 U.S. Dist. LEXIS 83443, *19-*20 (C.D. Cal. Aug. 21, 2009) (dismissing CW allegations

18  because the "statements, in addition to suffering from foundational issues, often contradict one

19  another").

20        None of the CW allegations demonstrate that the Defendants knew any of the supposed

21  misstatements were false *when made*.  The Ninth Circuit flatly rejected similar CW allegations in

22  *Intuitive Surgical*.  There, the plaintiff cited witnesses who claimed that the defendants had access to

23  reports demonstrating the company's poor sales records and lack of customer demand.  2014 U.S.

24  App. LEXIS 13530 at *28-*29.  The Ninth Circuit held that the statements "lack foundation because

25  they do not detail the actual contents of the reports the executives purportedly referenced or had

26  _____

27  [8] Although CW6 claims to have told Mr. Brar that certain technical upgrades to EV chargers "should
be completed before the EV chargers were shipped to customers" (Opp. at 13:22-23), CW6 is silent
28  about whether (or how) these upgrades impacted sales, if at all.

1  access to; the statements provide only snippets of information, not a view of the company's overall

2  health; and the witnesses lack first hand knowledge regarding what the individual defendants knew or

3  did not know about Intuitive' s financial health." *Id.*  In the absence of these specifics, Plaintiffs'

4  allegations do not support an inference of scienter, much less a cogent and compelling one.

5        **B.**      **The Brar Declaration and OIG Reports Do Not Support a Strong Inference of**

6              **Scienter.**

7        **The Brar Declaration Says Nothing About Defendants' Contemporaneous Knowledge:**

8  Plaintiffs argue that "the Brar Declaration establish[es] that Brar and Herrmann knew their

9  representations" about the Minit-Charger 12 and the failure to attain sales volumes of EV chargers

10  were false and misleading *at the time* they were made because the Declaration purportedly states these

11  issues were "occurring during the first and second quarters of 2013."  (Opp. at 2:13-17; 11:20-26.)

12  The Declaration establishes no such thing.

13        First, the declaration is silent about what Mr. Brar or Ms. Herrmann knew or believed ***during***

14  ***the Class Period***.  Rather, Mr. Brar's declaration is an *ex post* assessment of the factors that

15  contributed to ECOtality's decline, made with the benefit of hindsight, many weeks *after* the end of

16  the Class Period.  Moreover, Mr. Brar's statements are based, at least in part, on his discussions with

17  Company management and a review of certain unidentified documents.  (Supplemental Woodring

18  Declaration, Ex. 21 at ¶3.)  Yet, the declaration is silent about—and Plaintiffs do not allege—***when***

19  Mr. Brar obtained this information.  Thus, the Brar Declaration clearly does not support a finding of

20  scienter.  *See In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1217 n.14 (N.D. Cal. 2000)

21  ("[E]vents occurring after the alleged class period do not show that the representations made during

22  the class period were false when made."), *aff'd*, 283 F.3d 1079 (9th Cir. 2002).

23        Second, even if issues started to develop during Q1 or Q2 2013, Plaintiffs do not plead with

24  particularity that such issues impacted the Company's operations *at that time*.  Accordingly, Plaintiffs

25  cannot meet their burden.  In *City of Livonia*, 711 F.3d at 758, plaintiffs alleged that defendants lied

26  about the anticipated launch date of a new airplane.  *Id*. at 757.  Days after the plane failed a stress

27  test, defendants announced that "the initial results [of the test] are positive."  *Id*.  When it failed

28  another test, defendants stated that the plane "definitely will fly" as scheduled.  *Id*.  When the first

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

1    flight was delayed, the company's stock price dropped and plaintiff sued.  The district court dismissed

2    the complaint because plaintiff failed to allege that defendants "knew that their optimism was

3    unfounded," explaining the defendants could have "had a realistic hope that the defects . . . revealed

4    by the tests could be eliminated quickly, without requiring postponement of the flight."  *Id.* at 758.

5    Likewise, Plaintiffs have not adequately alleged that Defendants' optimism that the Company could

6    overcome issues with the Minit-Charger 12, post-EV Project sales efforts, and installations under the

7    EV Project was not warranted.  *See id.* At 759 ("There is no duty of total corporate transparency—no

8    rule that every hitch or glitch, every pratfall, in a company's operations must be disclosed in 'real

9    time,' forming a running commentary, a baring of the corporate innards, day and night.").

10       **The OIG Reports Are Silent As To Defendants' State of Mind:**  Plaintiffs' reliance on the

11   OIG Reports is likewise flawed.[9]  (*See, e.g.,* Opp. at 2:3-6.)  The OIG reports focus on the DOE's

12   management of the EV Project, **not** ECOtality's conduct or its officers' state of mind.  (*See* Ex. 1 at 2

13   (OIG audit underlying report initiated "to determine whether the Department had effectively awarded

14   and managed funding to ECOtality"); *see also* Ex. 4 at 2 (OIG audit underlying report initiated to

15   determine (i) "whether the Department was aware of . . . pertinent events that occurred prior to the

16   completion of our previous audit" and (ii) "whether the Department was effectively managing

17   Ecotality's awards in light of recent events").)

18       For example, the Opposition relies on the statement "***Department officials*** concluded that

19   ECOtality would be unable to complete installations on schedule . . ." to argue that Defendants "knew

20   ECOtality would not successfully complete the EV Project."  (*See* Opp. at 2:3-8; 8:8-15; 19:10-13

21   _____

22   [9] In maintaining that Defendants lied when they said ECOtality had "successfully executed upon the objectives of the EV Project" and that ECOtality was "well on [its] way to completing the EV project by summer of 2013 . . ." (*see, e.g.,* ¶ 72), Plaintiffs ignore the many judicially noticeable facts about ECOtality's progress toward completion – which, given the market for electric vehicles, was remarkable.  Plaintiffs take out of context the OIG's statement that installations were "drastically behind schedule" in July 2013.  (Opp. at 2:3-8; 8:8-15; 19:10-13.) The OIG's statement addressed only commercial chargers, which constituted a minority of the total installations under the award. (Ex. 4 at 5.)  ECOtality had already installed 4,000 commercial chargers (*see* Ex. 4 at 5; Ex. 5 at 1), ***exceeded*** the installation goal of 8,000 residential chargers (Ex. 1 at 9), and installed 104 of 200 DC Fast Chargers (Ex. 5 at 1).  Accordingly, well over 90% of the EV Project goal had been achieved. (Ex. 1 at 19.)  Indeed, at the time of ECOtality's Chapter 11 filing the DOE had reimbursed the Company for 98% of the EV Project based on completed installations.  (Ex. 4 at 7.)

Cooley LLP
Attorneys At Law
San Francisco

11.

REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC

(emphasis added).)[10]  Even crediting the OIG's statement that some unnamed government official questioned ECOtality's installation pace, the OIG reports *do not* say whether the DOE shared this conclusion with Company management or, even if it did, whether Mr. Brar or Ms. Herrmann agreed with it.  Nor do Plaintiffs allege that Defendants had access to the DOE documentation on which the OIG relied; on the contrary, Plaintiffs do not even identify that documentation or the information it supposedly contained.  Put simply, the OIG reports do not say anything about what Mr. Brar and Ms. Herrmann *believed and when they believed it*.  As such, the OIG's assessment "did not indicate whether [Mr. Brar], [Ms. Herrmann], or anyone else who had made optimistic public statements about [the EV Project] knew that their optimism was unfounded." *City of Livonia*, 711 F.3d at 758.

Finally, the October 2013 OIG report was prepared with the benefit of hindsight, ***after*** ECOtality had already commenced its bankruptcy proceeding.  Even ignoring potential political pressures that may have shaped the OIG's assessment, the fiscal status of ECOtality at the time the OIG prepared its report would obviously have impacted the OIG's conclusions.[11]

## C.   Plaintiffs' Complaint Does Not Support a "Core Operations" Inference.

With no particularized facts to raise an inference of scienter, Plaintiffs rely on the "core operations" inference, arguing that Defendants must have known purportedly adverse information about the EV Project, development of the Minit-Charger 12, and future sales after the EV Project. (Opp. at 14:9-15:15.)  However, a plaintiff may plead scienter absent "particularized allegations" about defendants' knowledge only in "exceedingly rare" cases where a plaintiff alleges the existence of specific red flags.  *South Ferry LP, #2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008). Plaintiffs have made no such allegations.

---

[10] Plaintiffs incorrectly allege that the DOE suspended payments to ECOtality under the EV Project because the Company was supposedly "drastically behind schedule."  (¶ 115.)  But the DOE only suspended funds when ECOtality was on the brink of bankruptcy.  (Mot. at 9.)  The DOE had *no* concerns about permitting ECOtality to proceed at any time before the Company's liquidity crisis.

[11] Plaintiffs are wrong that "the DOE rejected" ECOtality's Corrective Action Plan.  (Opp. at 9:3-4.) In reality, ECOtality and the DOE were engaged in an iterative process, as they had been for years, under which the DOE did not officially respond to ECOtality's submission before the Company's financial downturn.  (*See* Ex. 4 at 5 ("Ecotality had submitted the corrective action plan to the Department, but ***it had not been approved*** by the Department at the time of [ECOtality's] August SEC filing and subsequent bankruptcy petition.") (emphasis added).)

Cooley LLP
Attorneys At Law
San Francisco

12.

REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC

Here, the Complaint does not identify specific, contemporaneous information or "red flags" from which to infer Defendants' access and knowledge.  For example, Plaintiffs point to Defendants' alleged *access* to sales data and purported weekly monitoring of sales to conclude that they knew about purportedly lagging sales of EV chargers."  (¶ 100.)  But Plaintiffs do not say how often (if at all) Mr. Brar and Ms. Herrmann accessed the CRM system, or when specifically in the first half of 2013 (i.e., before or during the class period) the number of commercial Blink chargers supposedly dipped.  Access to sales data, without more, is insufficient to give rise to the core operations inference. *Intuitive Surgical*, 2014 U.S. Appl. LEXIS 13530 at \*25-\*27 (absent specific admissions from executives, core operations requires allegations "demonstrating that executives had ***actual involvement in creating false reports***. . . . Missing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives."); *see also In re Parametric Tech. Corp.*, 300 F. Supp. 2d 206, 223 (D. Mass. 2001) (defendants' viewing of "weekly sales reports show[ing] declines" did not answer "the critical question:  What did the defendants know and when did they know it?"); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (dismissing complaint where "plaintiffs merely assert in conclusory terms that the defendants had access to internal data").[12]

### D.    Viewed Holistically, the Complaint Fails to Raise an Inference of Scienter.

The Opposition argues that "Defendants had multiple motives" to make allegedly false and misleading statements, as the Company:  (i) avoided delisting of its stock, (ii) continued receiving payments from the DOE, (iii) raised millions of dollars in a private offering in June 2013, and (iv) avoided disclosing "serious corporate mismanagement."  (Opp. at 15:16-16:20.)  But Plaintiffs' theories are wholly irrational because Defendants "revealed" their alleged fraud *just weeks after*

---

[12] Plaintiffs' reliance on *South Ferry*—an "exceedingly rare" case in which plaintiff alleged specific red flags, confirmed by multiple witnesses, regarding the company's "core operations"—is unavailing.  542 F.3d at 785 n.3.  As *South Ferry* recognizes:  "Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard."  *Id.* at 784. *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014) is similarly unpersuasive.  There, the company admitted in a plea agreement with the DOJ the very facts that the plaintiff alleged demonstrated the defendants' false statements.  *Id.* at 565-66.

1    *making the allegedly misleading statements and without receiving any economic benefit.*

2        First, as articulated in the Motion, keeping a company from being delisted and raising money

3    are routine business objectives.  *See Lipton*, 284 F.3d at 1038.  Second, Defendants' public statements

4    about the EV Project were irrelevant to continued DOE funding because ECOtality was only

5    reimbursed for *work actually performed*.  (Ex. 1 at 12; see also ¶ 60.)  Finally, Plaintiffs' circular

6    reasoning that Defendants perpetuated a fraud to avoid disclosure of a fraud improperly assumes

7    predicate bad acts.  There are none.

8        Moreover, the Complaint and judicially-noticeable facts identify numerous nonculpable

9    explanations for Defendants' conduct, all of which undermine any inference of scienter.   These

10   include: the Company's fulsome multi-page and often-repeated risk warnings, the lack of *any* stock

11   sales by Mr. Brar, Ms. Herrmann or other officers and directors during the Class Period, ECOtality's

12   substantial progress in completing the EV Project, the relative insignificance of the Minit-Charger

13   on the Company's revenues, the Company's release of a next generation residential charger, and

14   commercial agreements with several large companies for post-EV project charger installations.

15   Accordingly, Plaintiffs cannot overcome the compelling inference that Defendants were honestly

16   optimistic about ECOtality's prospects, and timely disclosed negative information when they became

17   aware of it.  *See Tellabs*, 551 U.S. at 326 (courts are to review complaints "holistically").

18   **IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION**

19       Plaintiffs contend they adequately plead loss causation because ECOtality's stock price

20   declined after Defendants purportedly "revealed the Company's 'true financial condition.'"  (Opp.

21   27:13-15.)  Plaintiffs completely ignore authority holding that loss causation is not pled where the

22   defendants' statements "do not reveal the necessary causal link between the alleged fraud and the

23   drop in [] stock price."  *In re Rackable Sys., Inc. Sec. Litig.*, C 09-0222 CW, 2010 WL 3447857, at

24   *12 (N.D. Cal. Aug. 27, 2010)).   At most, Plaintiffs plead only that the market "reacted to

25   [ECOtality's] 'poor financial health' rather than any alleged fraud."  *In re Downey Sec. Litig.*, No. CV

26   08-3261-JFW (RZx), 2009 WL 736802, at *6 (C.D. Cal. Mar. 18, 2009).

27       Moreover, Plaintiffs tacitly concede that Defendants' statements about ECOtality's progress

28   under the EV Project did *not* cause their alleged losses.  (Mot. at 26:10-18.)  ECOtality's August 12,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**

2013 Form 8-K—the supposed corrective disclosure—said *nothing* about the Company's progress on the EV Project.  But Plaintiffs assert that the Company's disclosures about (i) the DOE suspending payments under the EV Project, (ii) ECOtality's inability to raise financing, and (iii) a potential bankruptcy filing were "related to defendants' false and misleading statements about the EV Project." (Opp. at 28:25-29:2.)  This is nonsense.  ECOtality's Form 8-K makes clear that the DOE suspended EV Project payments "[i]n response" to the Company's learning on August 8, 2013 that additional financing would not be forthcoming from an existing investor.  (Ex. 12 at 2.)[13]  Plaintiffs plead no facts to suggest that the "existing investor" declined to provide financing because of ECOtality's EV Project performance, prospects for post-EV Project sales, or plans for the Minit-Charger 12.[14]

ECOtality's inability to obtain financing (first learned on August 8)—and the concomitant need to explore possible bankruptcy—were not "foreseeable results of defendants' misrepresentations and omissions."  (Opp. at 29:2.)  On the contrary, these issues were neither known nor knowable until shortly before the Company disclosed that information to the market.[15]

## V.   CONCLUSION

The securities laws are *not* investor insurance.  *Dura*, 544 U.S. at 345.  Defendants respectfully request that Plaintiffs' incurable Complaint be dismissed with prejudice.[16]

---

[13] The October 2013 OIG Report is in accord.  (Ex. 4 at 6 ("[O]n August 8, 2013, the Department suspended payments for the Recovery Act award *after receiving notification of financial concerns from Ecotality*.") (emphasis added).)

[14] Plaintiffs' assertion that "defendants were unable to dupe another group of private investors to provide financing" in August 2013 demonstrates the flimsy and contrived nature of Plaintiffs' arguments.  (Opp. at 29:9-13.)  The "private investor" was ABB (Ex. 3 at 21), the Company's largest shareholder and a strategic partner who had two representatives on ECOtality's board of directors—both of whom Plaintiffs have named as defendants.

[15] Contrary to Plaintiffs' contention (Opp. at 27:7-9), loss causation is properly resolved on a motion to dismiss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (holding plaintiffs' complaint failed to adequately allege loss causation); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (affirming dismissal of complaint for "fail[ure] to meet the PSLRA's exacting requirements and the standards for pleading loss causation").

[16] Plaintiffs provide no argument as to why a failure to plead a Section 10(b) claim does not preclude them from stating a claim under Section 20(a).  This is because they cannot: "Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of Section 10(b)." *Zucco*, 552 F.3d at 990.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC

1

2    Dated:  July 21, 2014                    Respectfully submitted,

3                                             COOLEY LLP

4                                             _/s/ Tower C. Snow, Jr._
                                              Tower C. Snow, Jr. (58342)

5
                                             *Attorneys for Defendants*
6                                             *H. Ravi Brar, Susie Herrmann, Enrique Santacana,*
                                             *Kevin Cameron, and Andrew Tang*
7

8    108390674

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

**REPLY ISO MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
3:13-CV003791-SC**