1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  CHRISTOPHER P. SEEFER (201197)
3  KENNETH J. BLACK (291871)
   Post Montgomery Center
4  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
5  Telephone:  415/288-4545
   415/288-4534 (fax)
6  chriss@rgrdlaw.com
7  kennyb@rgrdlaw.com
           – and –
8  JEFFREY D. LIGHT (159515)
   655 West Broadway, Suite 1900
9  San Diego, CA  92101
   Telephone:  619/231-1058
10 619/231-7423 (fax)
11 jeffl@rgrdlaw.com

12 Lead Counsel for Plaintiffs

13 [Additional counsel appear on signature page.]

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 16 In re ECOTALITY, INC. SECURITIES | ) | Master File No. 3:13-cv-03791-SC |
| 17 LITIGATION | ) | |
| | ) | CLASS ACTION |
| | ) | |
| 18 This Document Relates To: | ) | LEAD PLAINTIFF'S NOTICE OF MOTION |
| 19 | ) | AND MOTION FOR FINAL APPROVAL OF |
| | ) | CLASS ACTION SETTLEMENT AND |
| ALL ACTIONS. | ) | PLAN OF ALLOCATION OF |
| 20 | ) | SETTLEMENT PROCEEDS AND |
| 21 | | MEMORANDUM OF POINTS AND |
| | | AUTHORITIES IN SUPPORT THEREOF |

22                          DATE:      August 14, 2015
                           TIME:      10:00 a.m.
23                          CTRM:      The Honorable Samuel Conti

24

25

26

27

28

1020398_1

1

**TABLE OF CONTENTS**

2

**Page**

3    I.      PRELIMINARY STATEMENT ....................................................................1

4    II.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
             SETTLEMENTS..........................................................................................5
5
             A.      The Settlement Enjoys a Presumption of Reasonableness Because It Is the
6                    Product of Arm's-Length Settlement Negotiations .................................7

7            B.      The Risks of Proving Liability and Damages .........................................8

8            C.      The Complexity, Expense and Likely Duration of Further Litigation..................11

9            D.      The Extent of Discovery Completed and the Stage of the Proceedings ...............12

10           E.      The Recommendations of Experienced Counsel ....................................13

11           F.      The Risks of Maintaining Class Action Status Through Trial Support
                     Approval of the Settlement .......................................................14
12
     III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................14
13
     IV.     CONCLUSION....................................................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - i -

1

**TABLE OF AUTHORITIES**

2
**Page**

3
**CASES**

4

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978) ................................................................15
5

6
*Bryant v. Avado Brands, Inc.,*
    100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on*
    *other grounds sub nom. Bryant v. Dupree,*
7
    252 F.3d 1161 (11th Cir. 2001) .............................................................9

8
*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ...............................................................15
9

10
*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980),
11
    *aff'd*, 661 F.2d 939 (9th Cir. 1981) .............................................6, 7, 12

12
*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
13
    (N.D. Cal. Sept. 6, 1991) .......................................................................12

14
*In re BankAtlantic Bancorp, Inc.,*
    No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
15
    (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v.*
    *BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ..................10
16

17
*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ..................................................................15
18

19
*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    No. 901, 1992 U.S. Dist. LEXIS 14337
20
    (C.D. Cal. June 10, 1992) .......................................................................14

21
*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
    142 F.R.D. 588 (S.D.N.Y. 1992) ...........................................................15
22

23
*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000) .....................................................9, 11, 15
24

25
*In re JDS Uniphase Corp. Sec. Litig.,*
    No. C-02-1486 CW (EDL), 2007 WL 4788556
26
    (N.D. Cal. Nov. 27, 2007) ......................................................................12

27
*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ........................................................8, 11, 13
28

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC        - ii -

1

2                                                                              **Page**

3

4   *In re Mfrs. Life Ins. Co. Premium Litig.*,
        No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
5       (S.D. Cal. Dec. 21, 1998) ...................................................................................11

6   *In re Omnivision Techs.*,
        559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................................14
7
    *In re Oracle Corp. Sec. Litig.*,
8       No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
        (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)............................10
9
    *In re Tyco Int'l, Ltd.*,
10      535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................9

11  *In re Veeco Instruments Inc. Sec. Litig.*,
        No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
12      (S.D.N.Y. Nov. 7, 2007) ...................................................................................10

13  *In re Warner Commc'ns Sec. Litig.*,
        618 F. Supp. 735 (S.D.N.Y. 1985),
14      *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..............................................................10, 12
15
    *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
16      720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
        *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................6, 14
17
    *In re Xcel Energy, Inc.*,
18      364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................13
19
    *Lewis v. Newman*,
20      59 F.R.D. 525 (S.D.N.Y. 1973) .........................................................................8

21  *Linney v. Cellular Alaska P'ship*,
        No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
22      (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ............................7

23  *Marshall v. Holiday Magic, Inc.*,
        550 F.2d 1173 (9th Cir. 1977) ...........................................................................6
24
    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
25      221 F.R.D. 523 (C.D. Cal. 2004) .............................................................7, 8, 14
26
    *Officers for Justice v. Civil Serv. Comm'n*,
27      688 F.2d 615 (9th Cir. 1982) ..................................................................... *passim*

28

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - iii -

Page

*Republic Nat'l Life Ins. Co. v. Beasley,*
   73 F.R.D. 658 (S.D.N.Y. 1977) .................................................................................8

*Robbins v. Koger Props.,*
   116 F.3d 1441 (11th Cir. 1997) .............................................................................12

*Rodriguez v. West Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ...................................................................................7

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ...............................................................................6, 12

*Util. Reform Project v. Bonneville Power Admin.,*
   869 F.2d 437 (9th Cir. 1989) ....................................................................................6

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ....................................................................................6

*White v. NFL,*
   822 F. Supp. 1389 (D. Minn. 1993) ........................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77k............................................................................................................................1
   §77o............................................................................................................................1
   §78j(b)........................................................................................................................1
   §78t(a)........................................................................................................................1

Federal Rules of Civil Procedure
   Rule 1 .......................................................................................................................13
   Rule 23 ..................................................................................................................3, 15
   Rule 23(c)..................................................................................................................14
   Rule 23(e)................................................................................................................1, 6

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - iv -

TO:     ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 14, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Samuel Conti, United States Senior District Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Joseph W. Vale will respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the [Proposed] Order Approving the Settlement and Order of Dismissal with Prejudice; and the [Proposed] Order Approving Plan of Allocation of Settlement Proceeds.

Lead Plaintiff's motion is based on the Stipulation of Settlement dated as of December 22, 2014 ("Stipulation" or "Settlement");[1] the following Memorandum in support thereof; the Declaration of Christopher P. Seefer in Support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Seefer Decl."), which was previously filed with the Court; the Declaration of Lead Plaintiff Joseph W. Vale ("Vale Decl."); the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl."); all of the prior pleadings and papers in this Litigation; and such additional evidence or argument as may be required by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff submits this Memorandum in support of his motion for final approval of the settlement of this Litigation for $1,100,000 in cash, and approval of the Plan of Allocation of settlement proceeds.  On January 31, 2014, Lead Plaintiff filed the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint").  The Complaint was brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Sections 11 and 15 of the Securities Act

---

[1]     All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC     - 1 -

1   of 1933 ("Securities Act") against Defendants H. Ravi Brar, Susie Herrmann, Enrique Santacana,

2   Kevin Cameron and Andrew Tang.[2]

3          Before filing for bankruptcy, ECOtality designed, manufactured, tested and sold electric

4   vehicle ("EV") charging and energy storage systems known as Blink chargers and derived most of

5   its revenues from the Department of Energy ("DOE") for its participation in the DOE's Vehicle

6   Technologies Program.  ¶¶2-3, 53.[3]  In 2009, ECOtality was awarded a grant of $100.2 million to

7   deploy Blink chargers and analyze EV charger usage data ("EV Project").  ¶¶3, 56.  The EV Project

8   was modified in 2012 and required ECOtality to deploy 13,200 EV chargers by September 2013 and

9   to complete data collection and analysis by December 31, 2013.  ¶¶61, 63.  Thus, investors knew that

10  ECOtality had to successfully complete the EV Project by the end of 2013 and then sell its products

11  without government subsidies.  The Complaint alleged that Defendants made materially false and

12  misleading statements about the Company by falsely representing ECOtality would successfully

13  complete the EV Project by meeting the installation and data collection milestones when, in fact, the

14  DOE had concluded ECOtality would not.  The Complaint also alleged that Defendants falsely

15  represented the Company would begin deliveries of the Minit-Charger 12, an industrial EV charger,

16  by 3Q13 when they knew of numerous problems with the development of the Minit-Charger 12 that

17  would prevent any sales in 2013 and that Defendants falsely represented ECOtality was successfully

18  transitioning the Company to selling its products and services without government subsidies when

19  they knew unsubsidized sales were substantially less than necessary to support ECOtality's

20  operations.

21         On May 2, 2014, Defendants filed a motion to dismiss the Complaint.  After extensive

22  briefing, on September 16, 2014, the Court issued an order granting Defendants' motion to dismiss.

23  The Court dismissed, with leave to amend, Lead Plaintiff's claims based on statements that

24  ECOtality was on track to complete the EV Project because falsity and scienter were not adequately

25  alleged.   The Court dismissed with prejudice Lead Plaintiff's claims based on Defendants'

---

[2]    ECOtality, Inc. ("ECOtality" or the "Company") was not named as a defendant in the Complaint
in light of the Company's bankruptcy filing.  Dkt. No. 46.

[3]    All paragraph references are to the Complaint.

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 2 -

1   statements regarding predictions about the release date of the Minit-Charger 12 and ECOtality's

2   transition away from the EV Project.  In addition, the Court dismissed with prejudice Lead Plaintiff's

3   claims under the Securities Act.

4         The Settlement on the terms set forth in the Stipulation fully resolves the Class' claims

5   against all Defendants and takes into account the specific risks and obstacles faced by Lead Plaintiff

6   if the Litigation continued.[4]  *See* Seefer Decl., ¶5.  The Settlement for $1.1 million in cash is the

7   result of Lead Plaintiff and his counsel's litigation efforts and extensive arm's-length negotiations

8   among the parties.  The Settlement was negotiated after the Court granted Defendants' motion to

9   dismiss while Lead Counsel continued their investigation and drafted an amended complaint.  Lead

10  Counsel believe this Settlement represents an excellent result for the Class.  As explained below and

11  in the Seefer Declaration, there are a number of real and substantial risks for the Class that Lead

12  Plaintiff and Lead Counsel believe could have resulted in no recovery at all for the Class.

13        Although this case settled at an early stage of the Litigation, Lead Plaintiff and his counsel

14  have vigorously prosecuted the Litigation from its commencement.  During the course of the

15  Litigation, Lead Plaintiff and his counsel:

16  •    Thoroughly investigated the facts underlying ECOtality's business and Defendants'
        representations during the Class Period;

17

18  •    Reviewed and analyzed press releases, conference call transcripts, filings with the
        U.S. Securities and Exchange Commission ("SEC") and other documents issued by
        ECOtality before, during, and after the Class Period;

19

20  •    Reviewed and analyzed witness accounts of ECOtality's business provided by former
        ECOtality employees;

21  •    Reviewed and analyzed reports related to the EV Project prepared by ECOtality;

22  •    Reviewed and analyzed reports related to the EV Project prepared by the U.S.
        Department of Energy Office of Inspector General Office of Audits and Inspections;

23

24  [4]   "Class" means, for settlement purposes only, a class certified under Rule 23 of the Federal Rules
    of Civil Procedure comprising all Persons who purchased ECOtality common stock beginning on

25  April 16, 2013 and through and including August 12, 2013, and were damaged thereby.  Excluded
    from this definition are (a) all Defendants and their immediate families, (b) ECOtality's former and

26  current officers and directors and their immediate families, and (c) any entity in which these
    excluded persons have a controlling interest.  Also excluded from the Class are those Persons who

27  validly and timely request exclusion from the Class pursuant to the terms of the Stipulation and its
    related Exhibits.

28

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC    - 3 -

1    •    Reviewed and analyzed documents filed in ECOtality's bankruptcy proceeding;

2    •    Reviewed and analyzed industry and securities analyst reports and media files concerning ECOtality;

3
4    •    Reviewed and analyzed ECOtality's stock prices before, during, and after the Class Period, including consultations with Lead Counsel's in-house economic and damage analysts;

5
6    •    Prepared and filed the Complaint;

7    •    Engaged in direct settlement discussions with Defendants' counsel after filing the Complaint;

8    •    Prepared a detailed mediation statement and reviewed Defendants' detailed mediation statement (although the mediation did not occur);

9
10   •    Filed an opposition to Defendants' motion to dismiss the Complaint after settlement discussions were unsuccessful;

11   •    Continued the investigation after the Court granted Defendants' motion to dismiss on September 16, 2014, including interviews of additional former ECOtality employees; and

12

13   •    Resumed settlement negotiations with Defendants after the Court granted Defendants' motion to dismiss.

14   *See* Seefer Decl., ¶4.

15        Lead Counsel, who are well-respected and experienced in prosecuting securities class

16   actions, have concluded that the Settlement is a favorable resolution of this complex action and is in

17   the best interest of the Class. *Id.*, ¶¶7, 48.  This conclusion is based on all the circumstances present

18   here, including the amount of the recovery, the substantial risk, expense and uncertainty in

19   continuing litigation through an amended complaint, another motion to dismiss by Defendants,

20   summary judgment, trial, and probable appeal, the relative strengths and weaknesses of the claims

21   and defenses asserted, past experience in litigating similar complex actions and the serious disputes

22   between the parties concerning the merits and damages.  In addition, Lead Counsel considered the

23   likely inability to collect on any judgment in the Class' favor as a result of ECOtality's bankruptcy,

24   the available insurance proceeds being depleted by the cost of continued litigation and the

25   difficulties in recovering from any of the individual defendants many years down the road.

26   Importantly, the Lead Plaintiff who was actively involved in the Litigation, after considering the

27

28

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 4 -

1  risks of further litigation, authorized Lead Counsel to settle the Litigation for $1.1 million.  *See* Vale

2  Decl., ¶¶4, 6.

3        While the deadline for filing objections – May 19, 2015 – has not yet passed, Members of the

4  Class appear to agree with Lead Counsel's conclusion.  Pursuant to the Court's Preliminary

5  Approval Order, over 10,100 copies of the Notice and Proof of Claim and Release Form were sent to

6  potential Class Members.  *See* Sylvester Decl., ¶¶3-10.  In addition, a Summary Notice was

7  published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  *Id.*, ¶13.  On March

8  20, 2015, the Stipulation, Notice, Proof of Claim and Release Form, and Preliminary Approval Order

9  were placed on www.ecotalitysecuritieslitigation.com, which was identified in the Notice.  *Id.*, ¶12.

10  The Notice informed potential Class Members of the terms of the Settlement, their right to object or

11  opt-out of the Settlement and the procedure for doing so, the Plan of Allocation of settlement

12  proceeds, counsel's request for an award of attorneys' fees and expenses and Lead Plaintiff's request

13  for reimbursement of his time and expenses.  While the deadline for objecting is May 19, 2015, to

14  date not a single Class Member has objected to any of the requested relief.[5]

15        For all the reasons discussed herein and in the Seefer Declaration, it is respectfully submitted

16  that the Settlement is a favorable resolution of this complex litigation and should be approved by the

17  Court.  Moreover, the Plan of Allocation, which was drafted with the assistance of Lead Plaintiff's

18  damages consultant, treats all potential claimants in a fair and equitable fashion and therefore should

19  be approved by the Court.

20  **II.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS**

21

22        It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

23  preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

24  625 (9th Cir. 1982).  Class action suits readily lend themselves to compromise because of the

25  difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is

26  beyond question that "there is an overriding public interest in settling and quieting litigation," and

27  _____

28  [5]    If any timely objections are received, Lead Counsel will address them in a reply memorandum, which will be filed with the Court no later than July 31, 2015.

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC     - 5 -

1  this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950

2  (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443

3  (9th Cir. 1989). In deciding whether to approve the settlement of a stockholders' class action under

4  Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair,

5  adequate and reasonable."[6]   The Ninth Circuit has set forth factors which may be considered in

6  evaluating the fairness of a class action settlement:

> 7   Although Rule 23(e) is silent respecting the standard by which a proposed settlement
>     is to be evaluated, the universally applied standard is whether the settlement is
> 8   fundamentally fair, adequate and reasonable.  The district court's ultimate
>     determination will necessarily involve a balancing of several factors which may
> 9   include, among others, some or all of the following: the strength of plaintiffs' case;
>     the risk, expense, complexity, and likely duration of further litigation; the risk of
> 10  maintaining class action status throughout the trial; the amount offered in settlement;
>     the extent of discovery completed, and the stage of the proceedings; the experience
> 11  and views of counsel; the presence of a governmental participant; and the reaction of
>     the class members to the proposed settlement.

12  *Officers for Justice*, 688 F.2d at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*,

13  8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp.

14  1379, 1387 (D. Ariz. 1989) ("*WPPSS*"), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th

15  Cir. 1992).  "The relative degree of importance to be attached to any particular factor will depend

16  upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique

17  facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

18      The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval*

19  *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*,

20  8 F.3d at 1375.  In exercising its discretion, "the court's intrusion upon what is otherwise a private

21  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

22  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

23  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

24  whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  The

25  Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

26

---

27  [6]   *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th
28  Cir. 1977).

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC        - 6 -

1

2

3

4

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what **_might_** have been achieved by the negotiators.

5

6

*Id.* (emphasis in original). Applying the above criteria demonstrates that the Settlement warrants the Court's approval.

7

8

9

10

11

12

Courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results. "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

13

14

### A. The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations

15

16

17

18

19

20

The Settlement, which was extensively negotiated between the parties provides an immediate and certain cash benefit to the Class in the amount of $1.1 million. The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the Settlement enjoys a presumption of fairness because it is the product of extensive arm's-length negotiations conducted by experienced and capable counsel with a firm understanding of the strengths and weaknesses of their respective client's positions.[7]

21

22

23

24

25

The settlement negotiations began before Defendants filed their motion to dismiss Lead Plaintiff's Complaint. Seefer Decl., ¶¶42-43. The parties agreed to mediation which was scheduled for March 24, 2014; and on March 11, 2014, the parties exchanged detailed mediation statements and also provided them to the mediator. *Id.*, ¶42. The mediation, however, did not take place.

26

27

28

---

[7]   *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create[s] a presumption that the agreement is fair"); *Ellis*, 87 F.R.D. at 18.

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 7 -

1   Although the mediation did not occur, the parties did engage in direct settlement discussions in

2   March and April but were unable to reach a resolution.  *Id.*, ¶43.  As a result, Defendants filed a

3   motion to dismiss the Complaint, which the Court granted on September 16, 2014.  *Id.*  The parties

4   resumed direct settlement negotiations after the Court granted Defendants' motion to dismiss and

5   talked numerous times in September and October.  On October 21, 2014, the parties reached an

6   agreement-in-principle to settle the case for $1.1 million.  During these negotiations, Lead Counsel

7   zealously advanced Lead Plaintiff's positions and were fully prepared to continue to litigate (and

8   did) rather than accept a settlement that was not in the best interest of the Class.

9          The agreement-in-principle was followed by negotiations regarding the detailed terms of the

10   Settlement, including the scope of releases, the timing of the funding of the Settlement, and the form

11   and content of the notice to be sent to the Class.  Such negotiations ultimately resulted in the

12   Stipulation now before the Court.  As a result of this process, there can be no question that the

13   Settlement is the result of hard-fought, arm's-length negotiations and is "not the product of fraud or

14   overreaching by, or collusion between, the negotiating parties."  *Officers for Justice*, 688 F.2d at

15   625.

16          **B.      The Risks of Proving Liability and Damages**

17          To determine whether a class action should be finally approved, the Court may balance the

18   continuing risks of litigation against the benefits afforded to the Class and the immediacy and

19   certainty of a substantial recovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.

20   2000).  In other words,

21          "[t]he Court shall consider the vagaries of litigation and compare the significance of
            immediate recovery by way of the compromise to the mere possibility of relief in the
22          future, after protracted and expensive litigation.  In this respect, 'It has been held
            proper to take the bird in hand instead of a prospective flock in the bush.'"
23
     *Nat'l Rural*, 221 F.R.D. at 526 (citation omitted).
24
            In the context of approving class action settlements, courts attempting to balance these
25
     factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."
26
     *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*
27
     *Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977).  This is even more so today in this post-Private
28

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 8 -

1   Securities Litigation Reform Act of 1995 ("PSLRA") environment amid defendants' constant

2   attempts to push the envelope and contours of the PSLRA.  *In re Ikon Office Solutions, Inc.*, 194

3   F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's

4   perspective in the wake of the PSLRA").  At least one court has noted: "An unfortunate byproduct of

5   the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading

6   standard."  *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on*

7   *other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

8       Although Lead Plaintiff and his counsel believe that the Class' claims have substantial merit,

9   they recognize the significant risk and expense necessary to prosecute Lead Plaintiff's claims against

10  Defendants through an amended complaint, Defendants' motion to dismiss the amended complaint,

11  class certification, summary judgment, trial, and subsequent appeals, as well as the inherent

12  difficulties and delays complex litigation like this entails.  Here, the Court dismissed all of Lead

13  Plaintiff's claims, some with prejudice.  Based on the Court's order, there was a substantial risk that

14  all of the Class' claims would get dismissed with prejudice, resulting in no recovery.  For a detailed

15  explanation of the risks of continued litigation, the Court is respectfully referred to Paragraphs 23-32

16  of the Seefer Declaration.

17      Even if Lead Plaintiff was successful in getting past the pleading stage and was able to

18  establish liability, the determination of damages, like the determination of liability, is a complicated

19  and uncertain process, involving expert testimony.  Among other things, Defendants have argued,

20  and would continue to argue, that the decline in ECOtality's stock price following the various

21  alleged disclosures were not due to Defendants' alleged misrepresentations and omissions but were

22  due to factors unrelated to the alleged fraud.  Thus, at summary judgment and trial, Defendants

23  would likely present expert testimony that the drops in the price of ECOtality common stock were

24  not caused by the alleged misleading statements or omissions but was due to other factors thereby

25  limiting the Class' damages.  *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007)

26  ("Proving loss causation would be complex and difficult.  Moreover, even if the jury agreed to

27

28

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC       - 9 -

1    impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").[8]

2    The reaction of a jury to such complex and contradictory expert testimony is highly unpredictable,

3    and in such a battle, Lead Counsel recognize the possibility that a jury could be swayed by

4    convincing experts for the Defendants, and find there were no damages or only a fraction of the

5    amount of damages contended. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-

6    45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually

7    impossible to predict with any certainty which testimony would be credited, and ultimately, which

8    damages would be found to have been caused by actionable, rather than the myriad nonactionable

9    factors such as general market conditions"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL

10   01695 (CM), 2007 U.S. Dist. LEXIS 85629, at \*30 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict

11   with respect to damages would depend on its reaction to the complex testimony of experts, a reaction

12   which at best is uncertain.").

13          While Lead Plaintiff believes that he would present sufficient evidence to establish the Class'

14   claims, Lead Plaintiff and his counsel are aware that Defendants would present counter evidence and

15   other substantial obstacles to obtaining a favorable judgment after trial.  The proposed Settlement

16   provides a favorable recovery for the Class while eliminating the risk, expense, delay, and

17   uncertainty of continued litigation.  Even if Lead Plaintiff was successful at trial, there is no

18   guarantee that the judgment would ultimately be sustained on appeal or by the trial court.

19          In short, while Lead Plaintiff and his counsel believe that the claims asserted have substantial

20   merit, if the Litigation continued, Lead Plaintiff and the Class would bear the risks of establishing

21   liability and damages that would have been vigorously challenged by Defendants.  The risks of

22   continued litigation when weighed against the immediate and certain recovery for the Class confirms

23

24

---

25   [8]    *See also In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist.
     LEXIS 48057 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688
26   F.3d 713 (11th Cir. 2012) (court granted defendants' judgment as a matter of law on the basis of loss
     causation, overturning jury verdict and award in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, No.
27   C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995, at \*46-\*49 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d
     376 (9th Cir. 2010) (granting defendants' motion for summary judgment for failure to demonstrate a
28   genuine issue of fact on the element of loss causation).

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC      - 10 -

1    the reasonableness of the Settlement and the Settlement is unquestionably better than another distinct

2    possibility – no recovery for the Class.

3          **C.     The Complexity, Expense and Likely Duration of Further Litigation**

4          Another factor courts consider in determining the fairness of a settlement is the complexity,

5    expense, and likely duration of continued litigation.  *See Mego Fin.*, 213 F.3d at 459; *Officers for*

6    *Justice*, 688 F.2d at 625.  If not for the Settlement, the Litigation would have continued to be fiercely

7    contested by the parties.  Continued litigation would be complex, costly, and of substantial duration.

8    The expense and time of continuing litigation would have been substantial.  As the court noted in

9    *Ikon*, which is applicable here:

10              In the absence of a settlement, this matter will likely extend for . . . years longer with
                significant financial expenditures by both defendants and plaintiffs.  This is partly
11              due to the inherently complicated nature of large class actions alleging securities
                fraud: there are literally thousands of shareholders, and any trial on these claims
12              would rely heavily on the development of a paper trial [sic] through numerous public
                and private documents.

13   194 F.R.D. at 179.

14         Lead Plaintiff's claims would be subject to an additional motion to dismiss after Lead

15   Plaintiff filed another complaint.  If the Court denied Defendants' motion to dismiss an amended

16   complaint, document discovery would need to be started and completed, depositions would have to

17   be taken, experts would need to be designated and expert discovery completed, Defendants'

18   expected motions for summary judgment after discovery would have to be briefed and argued, and a

19   trial could take weeks to complete.  Moreover, any judgment favorable to the Class would be the

20   subject of post-trial motions and appeal, which would prolong the case for years with the ultimate

21   outcome uncertain.  *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. MDL 1109, 1998 U.S. Dist.

22   LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for

23   plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which

24   is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute

25   rather than risking no recovery in future proceedings").  Absent settlement, this Litigation would

26   have ultimately developed into a battle of competing facts and inferences, competing experts, and a

27   credibility toss-up to be decided by the jury.  By contrast, the $1.1 million settlement is certain and

28

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 11 -

1 immediately realizable by the Class, and eliminates all of the risk, delay, and expense of continued

2 litigation.[9]

3      As the Ninth Circuit has made clear, the very essence of a settlement agreement is

4 compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*,

5 688 F.2d at 624 (citation omitted).

6      "Naturally, the agreement reached normally embodies a compromise; in exchange
for the saving of cost and elimination of risk, the parties each give up something they
7 might have won had they proceeded with litigation."

8 *Id.* (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the

9 uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of

10 their demands).   Accordingly, the fact that the Class potentially could have achieved a greater

11 recovery after trial does not preclude the Court from finding that the Settlement is within a "range of

12 reasonableness" that is appropriate for approval.   *E.g.*, *Warner Commc'ns*, 618 F. Supp. at 745.

13      This is particularly true, where, as here, potential for a better recovery for the Class is almost

14 non-existent because any favorable judgment after trial would almost certainly be uncollectable

15 because of ECOtality's bankruptcy, any available insurance proceeds being depleted by the ongoing

16 costs of litigation and the difficulty in recovering from any of the individual defendants many years

17 down the road.   Indeed, the Ninth Circuit in affirming the district court's approval of a class action

18 settlement found that "one factor [the company's financial condition] predominates to make clear

19 that the district court acted within its discretion."   *Torrisi*, 8 F.3d at 1376.

20     **D.**    **The Extent of Discovery Completed and the Stage of the Proceedings**

21      While the Settlement comes at an early stage in the litigation, both the knowledge of Lead

22 Counsel and the stage of the proceedings have reached a point where an intelligent evaluation of the

23 Litigation and the propriety of settlement could be made.   *See Officers for Justice*, 688 F.2d at 625.

---

24   [9]   Even if Lead Plaintiff prevailed through summary judgment, risks to the Class remain.  Even a
25 meritorious case can be lost at trial.  *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW
(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict
against plaintiffs and the action was dismissed).  Further, a successful jury verdict does not eliminate
26 the risk to the class.  *See In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist.
LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the
27 individual defendants and ordered a new trial with respect to the corporation); *Robbins v. Koger
Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud).
28

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC   - 12

1   The Ninth Circuit has held that: "'in the context of class action settlements, "formal discovery is not

2   a necessary ticket to the bargaining table" where the parties have sufficient information to make an

3   informed decision about settlement.'" *Mego Fin.*, 213 F.3d at 459 (citations omitted).

4         Despite the stay of formal discovery pursuant to the PSLRA, Lead Plaintiff and his counsel

5   were well informed to determine the propriety of settlement.  As discussed above and in the Seefer

6   Declaration, Lead Counsel conducted an extensive investigation of the facts alleged, reviewed and

7   analyzed witness accounts of ECOtality's business provided by former ECOtality employees,

8   consulted with an expert in damages, and reviewed and analyzed all public information regarding

9   ECOtality.  The parties also participated in extensive settlement negotiations, including an exchange

10  of detailed mediation statements (although the mediation did not occur), that involved a thorough

11  analysis of the Class' claims as well as the defenses that Defendants would raise.  Lead Plaintiff also

12  had the benefit of the briefing on Defendants' motion to dismiss and the Court's September 16, 2014

13  order granting Defendants' motion which further highlighted the factual and legal issues in dispute.

14  As a result, Lead Counsel were able to assess the strengths and weaknesses of the claims asserted

15  and resolve the Litigation on a highly favorable basis for the Class at an early stage of the Litigation,

16  a result consistent with the purposes of the Federal Rules of Civil Procedure.  *See In re Xcel Energy,*

17  *Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (court complimented counsel noting that early

18  resolution of case is consistent with Federal Rule of Civil Procedure 1).

19         **E.      The Recommendations of Experienced Counsel**

20         Lead Plaintiff through his counsel, having carefully considered and evaluated, *inter alia*, the

21  relevant legal authorities and evidence adduced to date to support the claims asserted, the likelihood

22  of prevailing on these claims, the risk, expense and duration of continued litigation, and the likely

23  appeals and subsequent proceedings necessary if Lead Plaintiff did prevail against Defendants at

24  trial, have concluded that the Settlement is clearly fair, reasonable and adequate, and in the best

25  interest of the Class.  *See* Seefer Decl., ¶¶46-48.  Lead Counsel have significant experience in

26  securities and other complex class action litigation and have negotiated numerous other class action

27  settlements throughout the country.  *See* www.rgrdlaw.com.  As this Court previously recognized,

28  "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC        - 13 -

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted).  Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *Id.*  Therefore, "'[g]reat weight' [should be] accorded to [Lead Counsel's] recommendation, who are most closely acquainted with the facts of the [case].'"  *Nat'l Rural*, 221 F.R.D. at 528 (citation omitted).[10]

**F.    The Risks of Maintaining Class Action Status Through Trial Support Approval of the Settlement**

Though the Court preliminarily granted class certification for settlement purposes, there was no guarantee that if Lead Plaintiff got past the pleading stage that his motion for class certification would have been granted.  While Lead Plaintiff believed that a motion for class certification would be ultimately granted, there was no guarantee that the proposed class would be certified, or certified as proposed.  Further, even if Lead Plaintiff's motion was granted, there was no assurance of maintaining class status throughout the litigation as courts may exercise their discretion to decertify the class at any time.  *See* Fed. R. Civ. P. 23(c).

Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate and thus deserves this Court's final approval.  Accordingly, Lead Plaintiff respectfully requests that the Court approve the Settlement.

**III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

Lead Plaintiff also seeks approval of the Plan of Allocation of the settlement proceeds.  The Plan of Allocation is set forth in full in the Notice mailed to potential Class Members.  Here, the Plan of Allocation is fair to all persons who purchased ECOtality common stock between April 16, 2013 and August 12, 2013 because it treats all Class Members the same by assuming the artificial price inflation in ECOtality's stock was a constant amount ($1.16) throughout the Class Period.  Seefer Decl., ¶53.  That is consistent with Lead Plaintiff's allegations that Defendants knew throughout the Class Period that ECOtality was not on track to successfully complete the EV Project.  *Id.*

---

[10]    *See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. 901, 1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class a compelling factor in approving settlement); *WPPSS*, 720 F. Supp. at 1392.

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 14 -

1    Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of

2    the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the

3    settlement as a whole – the plan must be fair and reasonable.  *See Ikon*, 194 F.R.D. at 184; *Class*

4    *Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  District courts enjoy "broad supervisory

5    powers over the administration of class-action settlements to allocate the proceeds among the

6    claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978);

7    *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation

8    formula need only have a reasonable, rational basis, particularly if recommended by "experienced

9    and competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf*

10   *Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

11   The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund

12   among all Class Members who submit a valid Proof of Claim and Release Form.  The Plan of

13   Allocation will result in a fair distribution of the available proceeds among Class Members who

14   submit valid claim forms and therefore should be approved.

15   **IV.    CONCLUSION**

16   For the reasons set forth above and in the Seefer Declaration, Lead Plaintiff respectfully

17   requests that the Court finally approve the Settlement and the Plan of Allocation of settlement

18   proceeds as fair, reasonable, and adequate.

19   DATED:  May 4, 2015                              Respectfully submitted,

20                                                    ROBBINS GELLER RUDMAN
                                                       & DOWD LLP
21                                                   CHRISTOPHER P. SEEFER
                                                     KENNETH J. BLACK
22

23                                                          s/ Christopher P. Seefer
24                                                   CHRISTOPHER P. SEEFER

25                                                   Post Montgomery Center
                                                     One Montgomery Street, Suite 1800
26                                                   San Francisco, CA  94104
                                                     Telephone:  415/288-4545
27                                                   415/288-4534 (fax)

28

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC          - 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
JEFFREY D. LIGHT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Additional Counsel for Plaintiff

1020398_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT &
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:13-cv-03791-SC       - 16 -

1

CERTIFICATE OF SERVICE

2       I hereby certify that on May 4, 2015, I authorized the electronic filing of the foregoing with

3 the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4 e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5 caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7       I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on May 4, 2015.

9

                      s/ Christopher P. Seefer

10                  CHRISTOPHER P. SEEFER

11                  ROBBINS GELLER RUDMAN
                      & DOWD LLP

12                  Post Montgomery Center
                  One Montgomery Street, Suite 1800

13                  San Francisco, CA  94104
                  Telephone:  415/288-4545

14                  415/288-4534 (fax)
                  E-mail:  chriss@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1020398_1

## Mailing Information for a Case 3:13-cv-03791-SC In Re Ecotality, Inc. Securities Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Brian Edward Cochran**
  bcochran@rgrdlaw.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Amber L. Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,RobynS@zhlaw.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Brian O. O'Mara**
  bo'mara@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,smutschall@zlk.com,tgottschlich@zlk.com,nporritt@zlk.com,office@punzalanlaw.com,aapton@zlk.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Samuel H. Rudman**
  srudman@csgrr.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com

- **Christopher Paul Seefer**
  chriss@rgrdlaw.com,kennyb@rgrdlaw.com,dhall@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Tower Charles Snow , Jr**
  tsnow@cooley.com,keudaley@cooley.com

- **Adam Christopher Trigg**
  atrigg@cooley.com,jcorrell@cooley.com

- **Avraham Noam Wagner**
  avi@thewagnerfirm.com

- **Jeffrey Michael Walker**
  jwalker@cooley.com,foxl@cooley.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,tcraig@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Joseph Bernard Woodring**
  jwoodring@cooley.com,jderosier@cooley.com,maraujo@cooley.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)