IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ECOTALITY, INC. SECURITIES LITIGATION <br><br> This Document Relates To: <br>   ALL ACTIONS | Master File No. 13-cv-03791-SC <br><br> ORDER GRANTING (1) MOTION FOR FINAL APPROVAL OF SETTLMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND (2) MOTION FOR ATTORNEYS' FEES AND <u>EXPENSES</u> |

## I. **INTRODUCTION**

Now before the Court are Lead Plaintiff's motions for (1) final approval of class action settlement and plan of allocation of settlement proceeds and (2) attorneys' fees and expenses.  ECF Nos. 88 ("Settlement Motion"); 89 ("Fees Motion").  The motions are fully briefed and unopposed.  ECF Nos. 94 ("Non-opposition"); 96 ("Reply").

The parties appeared before the Court for a final hearing to evaluate the fairness of the settlement on August 28, 2015.  No objections were filed with the Court or made during the hearing.  Having considered all of the parties' arguments, as well as the supporting documents and declarations, the Court hereby GRANTS the Settlement Motion and GRANTS the Fees Motion.

## II. BACKGROUND

ECOtality designed, built, and sold electric vehicle ("EV") charging systems. Most of ECOtality's revenues came via the Department of Energy's ("DOE") Vehicle Technologies program. In 2009, ECOtality received a $100.2 million grant from DOE to deploy EV chargers and analyze their usage (known as the "EV Project"). Pursuant to a 2012 modification to ECOtality's arrangement with DOE, ECOtality was required to deploy 13,200 EV chargers by September 2013 and to complete its data analysis by December 21, 2013.

Plaintiffs allege that between April 16, 2013 and August 9, 2013 (the "Class Period"), Defendants made a number of false or misleading statements about ECOtality's progress on the EV Project and the company's business prospects. In August 2013, ECOtality revealed a number of problems with its business, including its inability to complete the EV Project, the suspension of DOE payments, ECOtality's failure to sell enough EV chargers to support its operations, and technological problems with its EV chargers. ECOtality's stock price suffered a precipitous drop on August 12, 2013. ECOtality and its subsidiaries filed for bankruptcy one month later.

Plaintiffs brought this class action suit on August 15, 2013. ECF No. 1. Their Consolidated Amended Complaint ("CAC") asserts claims against ECOtality officers and directors under sections 10(b) (for making false or misleading statements that caused Plaintiffs to buy overvalued ECOtality stock) and 20(a) (for control person liability) of the Securities Exchange Act of 1934 (the "Exchange Act"). ECF No. 52 ¶¶ 1, 172-95. It also asserts

2

1  additional claims under Sections 11 (for including false or
2  misleading information in a registration statement) and 15 (for
3  control person liability) of the Securities Act of 1933 (the
4  "Securities Act").  Id.
5      The Court dismissed Plaintiffs' CAC on September 16, 2014 with
6  leave to amend.  ECF No. 70.  Several of Plaintiffs' claims were
7  dismissed with prejudice, including Plaintiffs' Section 11 claims.
8  Prior to filing an amended complaint, the parties stipulated to a
9  settlement on December 23, 2014.  ECF No. 78 ("Settlement
10 Agreement").  Pursuant to the Settlement Agreement, Defendants will
11 establish a Settlement Fund of $1,100,000.  The Settlement Fund
12 will be used to make payments for attorneys' fees and expenses,
13 settlement administration expenses, and an incentive award of
14 $1,350 to Lead Plaintiff Joseph Vale.  The balance will be
15 distributed to class members who timely file a claim form pursuant
16 to the Plan of Allocation, which is detailed in the Notice to class
17 members.  See ECF No. 78, Ex. A-1 ("Notice") at 8-10.  Any
18 remaining balance after the initial distribution will be
19 redistributed to class members who timely submitted a claim form,
20 without reversion to the Defendants.  If 100% of eligible claims
21 are filed, the parties estimate a payment of approximately $0.05
22 per share after expenses and fees.
23     The parties received the Court's preliminary approval of the
24 settlement on March 6, 2015.  ECF No. 84 ("Prel. Appr. Order").  As
25 of May 1, 2015, the claims administrator distributed 10,131 copies
26 of the Notice and claim form (collectively the "Claim Package") to
27 potential class members.  The claims administrator also published
28 the Notice in Investor's Business Daily and PR Newswire.  As of May

3

1, 2015, the claims administrator did not receive any requests for exclusion from the class.

Objections to the settlement, the request for final approval, and the request for attorneys' fees, costs, and incentive awards had to be filed by May 19, 2015. As of July 31, 2015, no objections had been filed. Nor were any objections made at the fairness hearing held on August 28, 2015.

### III. SETTLEMENT MOTION

#### A. Legal Standard

Settlement of a class action law suit requires approval of the Court. See Fed. R. Civ. P. 23(e). The Court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, the Court may consider any or all of the following factors, if applicable:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). This list is not intended to be exhaustive; the Court must consider the applicable factors in the context of the case at hand. See id.

Despite the importance of fairness, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits. See, e.g., Officers for

Justice, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation . . . .").

While balancing all of these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Id.  The Court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact.  See id.

**B. Discussion**

The first relevant factor in the present matter is the risk of continued litigation balanced against the certainty and immediacy of recovery from the settlement.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).  The Defendants denied, and continue to deny, liability for Plaintiffs' claims.  Given the risks associated with continued litigation, the Settlement Agreement, which offers an immediate and certain award for all of the Class Members, appears a much better option.

Under the circumstances, the Court also finds that the settlement amount is reasonable.  Lead Plaintiff initially estimated damages to be $12.9 million or $1.16 per share based on the $1.16 price decline on August 12, 2013.  ECF No. 79 ("Prel. Appr. Mot.") at 5-6.  That damage estimate was based on Lead Plaintiff's claims that all of the false statements alleged in the Complaint caused the stock price to be artificially inflated by $1.16.  Because the Court dismissed with prejudice several of

Plaintiffs' claims (ECF No. 70), the estimated recovery at trial is now less than $12.9 million. Although Lead Plaintiff has not provided a revised estimate of his expected recovery at trial, the $1.1 million settlement appears to be at least 10% of the expected recovery at this point.

A settlement of at least 10% of the expected recovery is reasonable in light of the strength of Lead Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation. See ECF No. 80 ("Seefer Decl.") ¶¶ 23-32 (detailing the risks of continued litigation, including that the Court could dismiss Lead Plaintiff's amended complaint with prejudice or that Lead Plaintiff would be unable to prove his claims at trial). Further, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." Officers for Justice, 688 F.2d at 628; see also In re Omnivision Techs., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving settlement in which class received payments totaling 6% of potential damages). The Court concludes, therefore, that the immediacy and certainty of the settlement award in light of the risks of continued litigation justifies the settlement amount. See Omnivision Techs., 559 F. Supp. 2d at 1042.

Courts also look at the extent of the discovery conducted and the stage of the litigation to determine whether the plaintiff has enough information to make an informed decision regarding settlement. In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459. No discovery has been conducted in this case. Lead Plaintiff nevertheless argues that "the stage of the proceedings have reached

6

a point where an intelligent evaluation of the Litigation and the propriety of settlement could be made."  Settlement Motion at 12. Specifically, Lead Plaintiff asserts that his counsel has conducted an extensive investigation of the facts alleged, reviewed and analyzed witness accounts of ECOtality's business, consulted with an expert in damages, reviewed and analyzed all public information regarding ECOtality, and participated in extensive settlement negotiations, including an exchange of mediation statements.  Id. at 13.  The Court is mindful that "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459 (citations and internal quotation marks omitted).  Overall, however, this factor does not weigh in favor of approval.

The next factor considers the recommendations of experienced counsel.  Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other class action settlements.  In their view, the settlement is "clearly fair, reasonable and adequate, and in the best interest of the Class."  Settlement Motion at 13.  This factor therefore weighs in favor of approval.

The final factor considered is the reaction of the class to the proffered settlement.  "'It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members.'"  Omnivision Techs., 559 F. Supp. 2d at 1043 (quoting Boyd v. Bechtel Corp., 485

7

F. Supp. 610, 622 (N.D. Cal. 1979)).  After receiving notice of the proposed settlement, class members in this suit have been silent. As a result, this factor weighs heavily in favor of approval.  See In re Rambus Inc. Derivative Litig., 2009 U.S. Dist. LEXIS 131845, *9, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) (quoting In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D.Pa. 1990)).

Given the benefits to the class and the lack of objections, the Court finds the settlement to be fair, adequate, and a sound alternative to continued litigation.  Lead Plaintiff's motion for final approval is GRANTED.

**IV.   FEES MOTION**

    **A.   Legal Standard**

Rule 23(h) provides that "[i]n a certified class action, the Court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, courts "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).  Where, as here, the settlement of a class action creates a common fund, the court has discretion to award attorneys' fees using either the lodestar method or the percentage of the fund approach.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  The percentage of the fund is the typical method of calculating class fund fees.  See id. at 1050 (noting "the primary basis of the fee award remains the percentage method").  The Ninth Circuit has established 25% of the common fund

as the "benchmark" for attorneys' fees, with 20-30% as the usual range.  Id. at 1047.  However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Even when applying the percentage method, the Court should use the lodestar method as a cross-check to determine the fairness of the fee award.  Vizcaino, 290 F.3d at 1050.  "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records."  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005) (footnote and citation omitted).  The Court's selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case, including the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar cross-check.  Vizcaino, 290 F.3d at 1048-50.

At its discretion, the Court may also award incentive or service awards to named plaintiffs to compensate them for work done on behalf of the class and in consideration of the risk undertaken in bringing the action.  Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  Courts often assess the reasonableness of the award by taking into consideration: "(1) the risk to the class representative in commencing a suit, both

9

financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken, 901 F. Supp. at 299 (citations omitted). In this district, a $5,000 incentive award is presumptively reasonable. See Pierce v. Rosetta Stone, Ltd., No. C 11-01283 SBA, 2013 WL 5402120, at *6 (citations omitted).

### B. Discussion

Lead Plaintiff's counsel requests a fee award of $275,000, payable out of the gross settlement amount of $1.1 million. The requested fee amounts to 25% of the common fund, consistent with the 25% benchmark the Ninth Circuit considers presumptively reasonable. See In re Bluetooth, 654 F.3d at 942.

The result achieved by Lead Plaintiff's counsel through this settlement is an adequate one in light of the risks. If the parties pursued further litigation, Lead Plaintiff would face possible dismissal with prejudice and potential challenges associated with proving his claims at trial. Further, a 25% fee award is less than the median fee award for similar cases. See Fees Motion at 7-8. Finally, the requested fee is reasonable under a lodestar cross-check analysis. Lead Plaintiff's counsel has provided evidence showing that its lodestar is $800,836.75. Thus, the requested fee represents only 34% of its lodestar. For these reasons, the Court finds the proposed 25% award for attorneys' fees reasonable.

Lead Plaintiff's counsel is also entitled to reimbursement of reasonable expenses. Fed. R. Civ. P. 23(h); see Van Vranken, 901 F. Supp. at 299 (approving reasonable costs in class action settlement). The Settlement Agreement permits Lead Plaintiff's counsel to seek up to $50,000 in litigation costs. Lead Plaintiff's counsel's incurred litigation expenses total $38,943.48. Having reviewed the evidence submitted in support of the request for expenses, the Court finds the expenses were reasonably incurred and awards Lead Plaintiff's counsel $38,943.48.

Finally, the Fees Motion requests $1,350 to compensate Lead Plaintiff for his time and effort as a representative of the Class. Lead Plaintiff has filed a declaration asserting that he devoted at least 15 hours to litigation-related activities in this matter. ECF No. 90 ¶ 8. Based on his recent income, he submits that a rate of $90 per hour is reasonable under the circumstances. Id. ¶ 9. The Court agrees.

For these reasons, Lead Plaintiff's motion for attorneys' fees is GRANTED.

**V.  CONCLUSION**

For the reasons detailed above, the Court GRANTS the Settlement Motion and GRANTS Lead Plaintiff's Fees Motion, and ORDERS as follows:

1. The Court hereby APPROVES the Settlement Agreement and the Plan of Allocation of Settlement Proceeds as set forth in the Settlement Agreement (ECF No. 78) and the Notice sent to class members.
2. The Court AWARDS Lead Plaintiff's counsel attorneys' fees in the amount of $275,000. The fees shall be allocated

11

```
                among counsel for the Lead Plaintiff in a manner that
                reflects each counsel's contribution to the initiation,
                prosecution, and resolution of the litigation.
       3.   The Court AWARDS Lead Plaintiff's counsel reimbursement
            of expenses in the amount of $38,943.48.
       4.   The Court AWARDS an incentive payment of $1,350 to Joseph
            Vale, the class representative.
All such amounts are to be paid from the settlement fund in
accordance with the terms of the Settlement Agreement.



       IT IS SO ORDERED.


       Dated:   August 28, 2015         _____

                                        UNITED STATES DISTRICT JUDGE
```

**United States District Court**
For the Northern District of California